The State vs. Leaver.

The State vs. Leaver.

*February 3 — March 3, 1885.*

HIGHWAYS: APPEAL TO S. C. *(1) Obstruction of streets in villages. (2) What is an obstruction? (3) Abandonment of street: Estoppel. (4) Court and jury: Fixing penalty: Waiver of objection. (5) Exceptions must be specific.*

1. Sec. 1326, R. S., applies to the streets in villages in relation to which no special provisions inconsistent therewith have been made (sec. 1347), although the functions of overseers of highways are performed therein by street commissioners.
2. To constitute an "obstruction" within the meaning of sec. 1326, R. S., an object or structure in a highway need not be such as to stop travel. Thus, a barn occupying nearly one half of the width of a street in a populous village, though leaving room for travel, is an obstruction.
3. Until a street, which has been dedicated to the public, is needed for actual use, no mere *non-user*, however long continued, will operate as an abandonment of the public right thereto; nor will the fact that until so needed for a highway the village authorities treated the street as the property of the owners of the fee, estop them from thereafter proceeding to remove obstructions therefrom.

The State vs. Leaver.

4. Whether in an action to recover the penalty for obstructing a highway the amount of such penalty should be fixed by the court or by the jury, is not determined. If fixed by the court, an objection upon that ground, to be available upon appeal, must have been made in the trial court.
5. A single general exception to an order of the trial court directing the jury to find the defendant guilty and to assess the penalty at $25, does not raise the question of the right of the judge to fix the penalty.

APPEAL from the Circuit Court for *Jefferson* County.

This action was brought under sec. 1326, R. S., to recover the penalty therein prescribed for obstructing Monroe street, in the village of Waterloo. The obstruction complained of is alleged to be a barn erected by the defendant in 1882, within the limits of the east side of the street. The action was brought by direction of the president of that village, and a judgment against the defendant for $25 is demanded in the complaint. The answer is quite lengthy, and the allegations thereof need not be stated. It is sufficient to say that all the questions considered in the opinion are raised by it.

In 1857 the lands included in the village of Waterloo were platted into blocks and lots by the respective owners thereof. The plat was duly executed, certified, and recorded. One Henry Drew was then the owner of the *locus in quo* alleged to have been obstructed by the defendant, and joined in the execution of the plat. Monroe street is designated on this plat, extending north and south, and crossing Waterloo creek, which runs through the lands thus platted. That street intersects Madison street, extending east and west on the north side of the creek. The point of intersection is the northwest corner of section 8, township 8 N., range 13 E. Hence the center lines of Monroe and Madison streets are section lines.

The defendant is the owner of a lot in the northwest corner of section 8, 48 feet wide east and west, and 130 feet

in length north and south. He derives his title through mesne conveyances by Drew and his grantees, in which the lot is described by metes and bounds. The first conveyance in this line was executed by Drew in 1864. He obtained title thereto in 1859.

The northwest block in section 8 is designated in the plat as block No. 16, and it was not subdivided into lots. It was, however, in 1869, so subdivided by one Mead, who owned a portion of it and was president of the village, by direction of the village board. Mead's plat was imperfectly executed. Both the above-named streets were designated on this plat the same as on the original plat.

A great number of conveyances, executed by the proprietors of the original plat and their grantees, in which lots and blocks platted therein are described according to the plat, were introduced in evidence. Also many ordinances and resolutions of the board of trustees of Waterloo, showing a general recognition and acceptance of the streets and grounds dedicated by the plat to public use. Monroe street is mentioned in some of these ordinances.

As early as 1860, probably earlier, a building was erected on the lot now owned by the defendant, by the then owner of such lot. A portion of the building stood within the platted limits of both Monroe and Madison streets. A few years later it was moved fifteen or twenty feet west, towards the center of Monroe street. About 1873 the village authorities required the owner to remove such building from the limits of Madison street. He accordingly moved it due south a sufficient distance to clear that street, and placed it upon a substantial stone foundation, where it now stands. The village paid a portion of the expense of such removal. It will thus be seen that the building still occupies a portion of Monroe street as platted. By direction of the village board a sidewalk was constructed in front of the building, on Madison street, within the limits of Monroe street, and the cost thereof was charged to the lot of defendant.

For several years before 1882 the village board leased, and appropriated money to pay the rent of, a part of Monroe street between defendant's lot and the creek, and used the same for the purposes of a lock-up and a pound.

In 1868 the village board directed that the portion of Monroe street *south* of the creek be cleared of obstructions. In 1881 a notice, signed by the president and trustees of the village, was served upon the defendant, requiring him to remove his buildings out of Monroe street. January 9, 1882, such board passed an ordinance declaring all obstructions in Monroe street public nuisances, and requiring defendant to re-move his buildings therefrom. Another ordinance was substituted for this on March 7, 1882, in which Monroe street, from Madison street south, was declared open for public use, and it required any person maintaining an obstruction therein to remove the same in ten days after service of a notice upon him to that effect.

· In obedience to the foregoing proceedings by the board, all obstructions were removed from that part of Monroe street north of the river (and there were many of them) by the respective owners of abutting lots, except those maintained by the defendant. He refused to obey the mandate of the board.

In March, 1882, the defendant commenced erecting a barn south of his store and within the limits of the street. The president of the village, in his official capacity, notified him to desist from placing such obstruction in the street, but the defendant proceeded with the erection of the building. This is the obstruction complained of.

There was much testimony introduced on the trial upon other propositions of fact not contained in the foregoing statement. Such of it as is deemed material is referred to in the opinion.

At the close of the testimony the circuit judge directed the jury to return the following verdict, which they accordingly did: "We, the jury, find the defendant guilty of ob-

structing the highway as charged in the complaint, and that he is indebted to the plaintiff in the sum of $25; and we find for the plaintiff that it is entitled to recover the penalty of $25, as provided in section 1326 of the Revised Statutes." The exception thereto is as follows: "The defendant then and there duly excepted to the charge of the court, and to the order directing the jury to find said verdict as above set forth, and to the whole and every part of said order and direction."

A motion for a new trial was denied, and judgment entered for the plaintiff pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *Knight & Hayes*, and oral argument by *E. A. Hayes* and *J. O. Hayes*.

For the respondent there was a brief by *I. W. and G. W. Bird*, and oral argument by *Mr. G. W. Bird*.

LYON, J. 1. The first question is, Do the provisions of sec. 1326, R. S., under which this action was brought, apply to the streets within the village of Waterloo? The section reads as follows: "Whoever shall obstruct any highway, or fill up or place any obstruction in any ditch constructed for draining the water from any highway, shall forfeit, for every such offense, a sum not exceeding twenty-five dollars, and the overseer of the proper district shall cause such obstruction immediately to be removed." An argument that those provisions are not so applicable is drawn from the last sentence of the section. It is said that there is no overseer of highways in that village. But the village is divided into highway districts, to each of which a street commissioner is assigned, who performs the functions of an overseer of highways in a town. P. & L. Laws of 1867, ch. 114, sec. 32. There is no difficulty, therefore, in the way of executing the mandate of sec. 1326 in the village of Waterloo. Sec. 1347, R. S., which is in the chapter containing sec. 1326, is con-

clusive of the question. It is there enacted that "the provisions of this chapter shall extend to all parts of the state, except where special provisions inconsistent therewith have been or shall be made by law in relation to particular counties, towns, cities, or villages." We find no special provision on the subject in the charter of Waterloo. The question first above stated must be answered in the affirmative.

2. The next question is, Was the structure complained of, which the plaintiff placed in Monroe street (assuming the street to have been at that time a public highway), an *obstruction* within the meaning of that term as used in sec. 1326? The argument is that because a portion of the width of the street was left open, so that travelers thereon could conveniently pass the structure, it was not an obstruction of the street, but only an encroachment upon it.

It is difficult to lay down any general rule by which to determine, in any given case, whether an object placed in a highway is an *obstruction* within sec. 1326 or only an *encroachment* within the meaning of sec. 1330. It may safely be said that an object or structure, to be an obstruction, need not necessarily be such as to stop travel on the highway. A man may wilfully place a load of hay or a pile of wood in the middle of the street and leave it there. This would not be an encroachment within sec. 1330, because it is not a "fence, building, or other fixture." Yet it would, undoubtedly, be an obstruction within the meaning of sec. 1326, although room was left on either side of it for travelers on the highway to pass.

The fact that sec. 1326 contains a direction for the summary removal of the obstruction by the overseer would seem to indicate that all objects unlawfully placed within the highway, which interfere at all with the use of it by the public, are obstructions if the authorities may lawfully remove the same summarily. In *Hubbell v. Goodrich*, 37 Wis. 84, this court held that any such object which unnecessarily

impedes or incommodes the lawful use of the highway by the public may be thus summarily removed. See, also, *Wyman v. State*, 13 Wis. 663. It requires no argument to show that a structure occupying nearly one half the width of a highway in a populous village impedes and incommodes travel on such highway.

We conclude, therefore, that the structure complained of was an obstruction to the street within the meaning of sec. 1326.

3. Testimony was given on the trial, in behalf of the plaintiff, tending to show that in 1842 a highway was laid out on the line of Monroe street by the supervisors of the town in which the *locus in quo* was then situated. Also that in 1844 a territorial road was laid on the same line. The validity of these proceedings was vigorously assailed by the learned counsel for the defendant. We find it unnecessary to determine the question of their validity for the reason that, by the original plat of the village of Waterloo, made and recorded in 1857, and which was regular in all particulars, Monroe street was unquestionably dedicated to public use as a highway. Hence the validity or invalidity of such prior proceedings is of no importance. Mead's plat of the subdivision of block 16 is also unimportant. It merely tends to show a recognition by the village board of the original plat.

4. We are next to consider the effect of the long delay by the village authorities to accept Monroe street as a public highway, and to clear it of obstructions, and of the acts of the village board in treating it as private property.

It is settled that until the time arrived when the street was needed for actual use, no mere *non-user*, however long continued, could operate as an abandonment of the public right thereto, and all persons in possession until that time arrived hold subject to such right. It was so held, after much consideration, in *Reilly v. Racine*, 51 Wis. 526.

It is not claimed that the part of Monroe street north of the creek was needed for public use as a highway until the village board so declared in 1881. Indeed, counsel for defendant maintain that it was never needed for that purpose. However, the decision of the village authorities in that behalf is final and conclusive. Hence there was no adverse occupancy of the street until 1881. This disposes of the defenses of delay and acquiescence by the village board.

It follows from what has been said that the public right was not affected by the various acts of the village authorities which are pleaded as estoppels. These are: (1) Paying a part of the expense of removing the defendant's store out of Madison street, leaving it still in Monroe street; (2) paying rent for a part of that street for use as a pound and lock-up; (3) taxing the defendant's lot by metes and bounds to the section line in the center of the street; and (4) requiring defendant to bear the cost of a sidewalk in front of his store on Madison street within the limits of Monroe street. The only significance of these several acts is that until the public required the use of Monroe street as a highway the village board treated it as the property of the owners of the fee, without regard to the right to accept the dedication by the original plat at some future time when the public necessities should demand it. We do not perceive how they could properly treat it in any other way. We find no element of a valid estoppel in any of the above acts. But there is a provision of statute which absolutely prohibits the village board from vacating any street in the platted portion of Waterloo without the consent of the owners of the abutting lots, and it declares valid all streets and highways marked on any plat of such village, and provides that the same shall not be altered or discontinued except as therein provided. P. & L. Laws of 1869, ch. 167, sec. 6. Under this statute it is difficult to perceive how any of the acts pleaded as estoppels, or any omission or delay by

the village authorities to enforce the public right in such streets, can operate to defeat such right. We conclude that the defenses based upon such acts, omissions, and delay on the part of the village board are not available to defeat the action.

It results from the foregoing conclusions that the defendant was guilty of maintaining an obstruction in a public highway. The facts being undisputed, it was proper that the circuit judge should direct the jury so to find.

5. A single question remains for consideration. The circuit court directed the jury to assess the penalty at $25, which is the maximum penalty of the statute. This is alleged for error. It is claimed that it was the province of the jury, not the court, to determine the penalty. Sec. 3299, R. S., the provisions of which are applicable to this case, provides that judgment may be rendered "for such sum as the court or jury shall assess." On the one hand, it is claimed that the jury must fix the penalty if the cas e is tried by a jury; and if tried by the court, then the court shall assess it. On the other hand, it is claimed that a penalty is in the nature of a fine, and inasmuch as fines are imposed by the court, so also the amount of a penalty should be, although recovered in a civil action tried by a jury. Hence it is claimed that the statute should be construed as merely authorizing the trial judge, in his discretion, to leave it to the jury to assess the penalty, or assess it himself. Both propositions are plausible, but, for a reason which will presently be stated, we do not find it necessary to decide which is the sound one. We suggest, however, that in such cases it is the safer course to let the jury assess the penalty.

The reason we do not give a construction to sec. 3299 is that the point was not raised in the circuit court. Had specific objection been made at the trial to the direction by the judge to the jury to assess the maximum penalty of $25, he might have left it to the jury to assess the penalty. Had

the point been specifically made on the motion for a new trial, the motion might have been denied on condition that the plaintiff remit all of the penalty but a nominal sum. It would be unjust, as well as a violation of a settled rule of practice, to allow the objection, made for the first time in this court, to prevail here, when the alleged error could have been so easily corrected had the attention of the trial judge been called to it.

Moreover, the exception to the direction of the court to the jury is quite general — almost too much so to be available for any purpose. It is to the order directing the verdict, and to the whole and every part thereof. Now, the order contains two directions: one to find the defendant guilty; the other to assess the penalty at $25. One of these directions, we have seen, was correct. In that case a general exception to the directions would not reach the erroneous direction. But it is unnecessary to pass upon the exception further than to say that it does not raise the question of the right of the judge to fix the penalty.

*By the Court.*— The judgment of the circuit court is affirmed.