BARTLETT, Appellant, vs. BEARDMORE and others, Respondents.

*September 3 — September 23, 1890.*

*Highways: Dedication: User: Obstructions.*

1. In an action of trespass against town officers who had torn down a fence built by the plaintiff, the evidence — showing, among other things, that the fence was in a traveled road, and that the plaintiff had previously built other fences·so located as to manifest an intention to dedicate the *locus in quo* as a public highway, and had allowed.it to be used as such for many years — is *held* to sustain a verdict to the effect that the fence torn down was in a public highway which had become such by lawful user.

2. One of the questions submitted for a special verdict was, "Was any part of the fence which defendants pulled down in a public highway which had become such by lawful user?" *Held,* that there was no abuse of discretion in the wording of the question.

3. The public may acquire by user a right to more than the main traveled track of a road, especially where the owner of the land has manifested an intention to dedicate to the public a highway of the usual width.

4. An instruction to the jury that to constitute a valid dedication there must be an actual intent to dedicate, "of which the user by the public is evidence and no more, and a single act of interruption by the owner is of much more weight upon a question of intention than many acts of enjoyment," is *held* to have been properly refused.

5. A barbed-wire fence intentionally placed lengthwise in the traveled portion of a public highway is an obstruction within the meaning of sec. 1326, R. S., and may be removed as therein provided.

APPEAL from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

It is undisputed that at the time of the trial the plaintiff was the owner of the E. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of section 8, township 14, range 16, in Winnebago county, and had been for forty years; that the north line of his land was the south line of land owned by Silas M. Allen, and subsequently by

his son Timothy; that in 1849–50 a state road was laid out
and opened from what is now Berlin to Neenah, which
struck the west line of said section 8 at the quarter-post, and
ran from thence east on the quarter-section line of said sec-
tion to a point designated as X, and from thence northeast-
erly at an angle of about forty-five degrees, and ran on
towards Neenah; that, twenty rods west of the point X,
there commenced a public highway at a point designated
as A, in the center of the state road, and ran from thence
south, along the west line of *Bartlett's* land; that the por-
tion of the state road from A to X was about sixty-three
feet wide, of which about thirty feet was on *Bartlett's*
land, and thirty-three feet on Allen's land; that travel on
that portion of the state road which ran northeasterly from
the point X was for a short distance abandoned, many

years ago, and instead thereof the travel continued directly
east from the point X for a distance of about six rods,
where the road fence on the north or Allen's side of the
road, turned northeasterly; that upon the south side of
said state road, and about thirty feet from said quarter-
section line, and for a distance of twenty-three rods and
twenty links east from the center of the road mentioned as
running south, *Bartlett* maintained a substantial road fence,
the east end of which was constructed of pickets, and term-
inated at a point designated as E; that from thence *Bart-
lett's* fence ran south a distance of ten feet, and from thence
east a distance of ten or twelve feet, to the northwest cor-

ner of his barn; that that barn was sixty feet long, east and west; that eighty-six feet and four inches east of the barn was *Bartlett's* east barn-yard fence, which ran from the south directly north to a point designated as F, five feet north of said quarter-section line, which point F was sixty-six feet from the road fence on the northwest side of the road; that from said point F in an easterly direction, for a distance of seventeen feet, and from thence in a south-easterly direction to a point in said quarter-section line designated as G, there was an old board fence wholly on Allen's land, said to have been put there by *Bartlett* in 1860; that the barn doors on the north side of Bartlett's barn were about twelve feet wide, and came to about twelve feet from the northwest corner of the barn, and about thirty-six feet from the northeast corner thereof; that in 1884 or in 1885, *Bartlett* built a barbed-wire fence from the point designated as F, at the north end of the barn-yard fence mentioned, westerly, and a little south of west, for a distance of $124\frac{1}{2}$ feet, to a point designated as B, the same being five feet and four inches south of the quarter-section line, and only thirty-eight feet and four inches from the road fence on the north side of the road at that point; that sixty-five feet of the easterly end of that wire fence was on Allen's land, and only fifty-nine and one half feet of the westerly end of it was on *Bartlett's* land; that the point so designated B was directly north from said barn doors, and thirty-three feet therefrom; that said wire fence was torn down, October 27, 1887, by the defendants, acting as town supervisors and overseer of highways, for which this action of trespass was brought.

The defendants justify on the ground that the portion of said wire fence on *Bartlett's* land was an unlawful obstruction of said highway. The jury returned a special verdict to the effect that all of the wire fence on *Bartlett's* land so pulled down was in a public highway, which had become

such by lawful user, and that if the plaintiff was entitled to recover they assessed his damages at $4.50. The court overruled the plaintiff's motion for a new trial, and ordered judgment for the defendants, with costs. From that judgment the plaintiff appeals.

For the appellant there was a brief by *Gary & Forward*, and oral argument by *C. H. Forward*.

For the respondents there was a brief by *Bouck & Hilton*, and oral argument by *Gabe Bouck*.

CASSODAY, J. A former judgment in this action was reversed for error. 74 Wis. 485.

The evidence as to the exact location of the fence in front of and northeasterly from *Bartlett's* barn prior to the construction of the wire fence in question is considerably mixed and conflicting. There is considerable evidence on the part of the plaintiff tending to prove that as early as 1862 or 1863, he built a board fence from a foot or so east of the barn door directly north to where the wire fence stood, and from thence easterly, on substantially the same line occupied by the wire fence, to the old board fence mentioned in the foregoing statement; that the fence so running north from the barn was not stationary, but was put up in the fall and taken down in the spring, and sometimes built of one kind of material and sometimes of another; that "sometimes it commenced at a post a few feet from the west corner of the barn, and ran northeast to the corner post of the barbed-wire fence" designated B in the foregoing statement; that for many years prior to the construction of the wire fence, *Bartlett* had maintained a fence of some kind on substantially the same line where the wire fence was located.

On the contrary, there is evidence on the part of the defendants tending to prove that such old fence started seven or eight feet east of the barn door and ran in a northeasterly direction until it reached the point designated F in the

foregoing statement, or until it struck the west end of the old fence wholly on Allen's land, running westerly from said point F somewhere from twenty to thirty-five feet, and which was some fifty-five to sixty feet from the road fence on the northwest side of the road; that west of the fences last mentioned there was no fence between the barn and the traveled track of the highway prior to the construction of the wire fence; that while the main or regularly traveled track was always north of where the wire fence was located, yet that up to the time of such location there had from time to time been public travel over the whole of the land where that portion of the wire fence on *Bartlett's* land was located, and that this was especially true in the spring of the year, when the main traveled track was more or less muddy.

Such evidence, with the undisputed facts that the road in question was a part of the public highway from Winneconne to Neenah, and had been for forty years; that northeasterly from the point designated as F, as well as westerly from *Bartlett's* barn, this highway was regularly fenced out on both sides, so as to leave a space of from sixty-three to sixty-six feet wide for such public highway,— seems to be sufficient to sustain the verdict to the effect that the part of the wire fence on *Bartlett's* land pulled down by the defendants was in the public highway, which had become such by lawful user. It is to be remembered that the plaintiff expressly sanctioned the validity of all that part of the highway westerly from his barn, by constructing his road fence about thirty feet south of his north line, thus leaving the highway about four rods wide. The north side of his barn was so nearly in line with the road fence he so constructed as to obviate the necessity of any road fence north of it. Moreover, it is to be observed that a fence commencing seven or eight feet east of the barn door, and then running in a northeasterly direction, as testified to by

witnesses on the part of the defense, and as manifestly found by the jury, would be about four rods from the road fence on the northerly side of the road. The fact that the plaintiff built that fence in that place and in that direction, as we must assume he did from the verdict, and the further fact that the northeasterly end of that fence was on Allen's land, and extended from there to the point designated as F, and from thence southeasterly to *Bartlett's* north line, at the point designated as G in the foregoing statement, seem to be sufficient to authorize the inference that in building such fences in such directions *Bartlett* intended to dedicate so much of his land to the public highway as was sufficient to make the same four rods wide, or thereabouts. It follows that the court properly refused to direct a verdict in favor of the plaintiff.

It remains to be determined whether there was any material error upon the trial. The learned counsel for the plaintiff excepts to the form of the question submitted to the jury in these words: " Was any part of the fence which the defendants pulled down in a public highway which had become such by lawful user? " The grounds of the exception are that it did not present the question in issue; that it called for a conclusion of law and not of facts, and was in effect a general verdict. We have often held that the form of the special verdict is very much in the discretion of the trial court. There does not appear to have been any abuse of discretion in the wording of this question.

The statutes prescribe that " all public highways now in use, heretofore laid out and established pursuant to law, and all roads not recorded which shall have been or shall be used and worked as public highways ten years or more, shall be deemed public highways, except " in certain cases, not here material. Sec. 1294, R. S. Of course this statute was in force for more than ten years prior to the alleged trespass. The court fully instructed the jury to the effect

that, if the place where the alleged trespass was committed had not been used by the public uninterruptedly for any ten consecutive years prior to the alleged trespass, then it was not a highway; that, to constitute a valid dedication to the public, there must be an intention to dedicate by the owner, evidenced by the requisite public user; that a dedication by mere user is necessarily confined to the lands actually used, but is not necessarily limited to the main traveled path; that such dedication may be inferred to extend to the ordinary width of highways, unless such presumption is negatived by the fact of a fence or other obstruction which excluded the public therefrom; that the intention to dedicate may be inferred from the acts of the party and the surrounding circumstances as proven, including silence, omissions, or commissions on the part of *Bartlett*. Counsel cite this court to the proposition that "the dedication of a highway by user is necessarily confined .to the lands actually used." *Valley P. & P. Co. v. West*, 58 Wis. 607. This is undoubtedly the rule where there is no other evidence of dedication but *mere user*. Thus it is said in a late and excellent work by Judge Elliott and his son that, "if the right to the way depends solely upon user, then the width of the way and the extent of the servitude is measured by the character of the user, for the easement cannot be broader than the user." Elliott, Roads & Streets, 136. The trial court, in effect, so charged, but said, in the same connection, that such dedication was not necessarily limited to the main traveled path. It may be that such charge was prejudicial to the defendants, since it is very manifest, from the facts stated, that this is not a case of dedication *solely by user*. It is undisputed that the plaintiff dedicated the south half of a portion of the road westerly from his barn by the building of his picket fence where he did. So the jury manifestly found that he built his fences northeasterly from his barn in such a way as to induce Allen to

fence out the road four rods wide, where the same was
wholly on his land.   Counsel seem to think that such dedi-
cation was necessarily confined to the main traveled path,
and they asked an instruction to the effect that such dedi-
cation was confined to such lands as had "been actually
used by the public as a highway without interruption for
ten years."   If the words, "without interruption," apply
only to the absence of some barrier or obstruction to travel,
then the court, in effect, so instructed.   If they imply that
such user must have been continuous, or that every traveler
upon the highway passed over the very land where the
wire fence was located, then it was not good law, and was
properly rejected, especially since there was here something
more than mere user.   Most country roads have a narrow
beaten track, but it does not follow that the use is confined
to such path.   Teams must pass each other, and for that
purpose must necessarily depart from the main traveled
track.   So when such track is muddy, public convenience
requires departures from such track.   We cannot hold that
the public can acquire no legal right to such sides of the
main traveled track by such ordinary user.   On the con-
trary, it is held by courts of high authority that "where a
highway is established by user merely over a tract of land
of the usual width of a highway, the right of the public is
not limited to the traveled path, but such user is evidence
of a right in the public to use the whole tract as a highway
by widening the traveled path, or otherwise, as the in-
creased travel and the exigencies of the public may require."
*Sprague v. Waite*, 17 Pick. 309; *Hannum v. Belchertown*,
19 Pick. 311; *Simmons v. Cornell*, 1 R. I. 519; *Cleveland v.
Cleveland*, 12 Wend. 172.   Under the charge of the court
the jury were required to find for the plaintiff, unless they
found that the part of the fence pulled down stood upon
land which had become a public highway by ten years' act-
ual user.   This more than covered the request of the plaint-

iff to charge, in effect, that there was no presumption that a highway established by user was four rods wide, or of any particular width, and hence there was no error in refusing such request.

Several of the instructions requested were either given in substance in the general charge or inapplicable to the evidence, or related to matters admitted or conceded by all and hence not controverted, and therefore properly rejected.

The learned counsel for the plaintiff excepts to the refusal of the court to give an instruction in the language of an English judge, quoted by Cole, J., in *Tupper v. Huson*, 46 Wis. 649, to the effect that there must be an actual intent to dedicate, "of which the user by the public is evidence and no more; and a single act of interruption by the owner is of much more weight upon a question of intention than many acts of enjoyment." The instruction was not strictly applicable to the case, and if it were it is doubtful whether the court should have charged that every act of such interruption should have such effect as a matter of law. Many temporary interruptions may be imagined, when there would be no intention to obstruct. Besides, it may be questionable whether the proposition is strictly accurate. In the recent work of Judge Elliott mentioned it is said: "If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation. Regard is to be had to the character and effect of the open and known acts, and not to any latent or hidden purpose. If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which

would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent." Elliott, Roads & Streets, 92. We cannot say that the refusal to instruct as requested was error.

The defense was based upon both dedication and prescription, and there is sufficient evidence in the case to support the defense on both grounds. The use by the public for the requisite period, in the absence of proof to the contrary, must be presumed to have been under claim of right, without proof of any act of the town authorities upon the particular land in dispute. *Hart v. Red Cedar*, 63 Wis. 639. A public highway, established by dedication or prescription or both, stands in law upon the same footing as one that has been legally laid out. *West Bend v. Mann*, 59 Wis. 69. It follows that whoever obstructs any highway so established by dedication or prescription or both, subjects himself to the forfeiture prescribed by sec. 1326, R. S. A barbed-wire fence intentionally placed nearly lengthwise the traveled portion of a public highway is certainly an obstruction, within the meaning of that section. *State v. Leaver*, 62 Wis. 387; *Pauer v. Albrecht*, 72 Wis. 416. It is much more than a mere encroachment, within the meaning of sec. 1330, R. S. We find no material error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.