KELLAR, Respondent, vs. EARL, Appellant.

*February 8 — March 1, 1898.*

*Highways: Laying out and opening: Notice to remove fences.*

1. The laying out of a highway is not the taking or appropriation of the land for public use. Until the highway has been opened by order of the supervisors, the public acquires no right to its use, and the owner may use the land in the same manner as he did before the highway was laid out.

2. Under sec. 1284, R. S. 1878 (providing that whenever a highway is laid out through inclosed, cultivated, or improved lands the supervisors shall give the owner or occupant notice to remove his fences within such time as they may deem reasonable, not less than thirty days, and that no person shall be required to remove such fences between April 1 and November 1 in any year), and sec. 1337 (providing that no person shall be required to remove any fence under

Kellar vs. Earl.

the provisions of secs. 1334–1336, except between November 1 and
April 1, unless the same shall have been made within three months
next before the making of the order for removal), an order served
September 27, requiring a landowner to remove his fence within
forty-five days, and an order served October 25, requiring him to
remove it within thirty days, were nullities, where such fence had
not been built within three months of the making of the orders.

APPEAL from a judgment of the circuit court for Chip-
pewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

This was an appeal from a judgment for $10 and costs, given
in an action against the defendant for an alleged trespass
in cutting down and removing portions of certain fences De-
cember 9, 1896, upon the lands of the plaintiff, to wit, lot 8,
section 15, town 28, range 9 W., and which the defendant
claimed were in a public highway in the town of Lafayette,
in Chippewa county, in a road district over which he was
overseer.

On behalf of the plaintiff evidence was given to the effect
that on the 9th of December, 1896, the defendant was on
the tract of land between the plaintiff's place and one Nel-
son's, who owned the forty east of the plaintiff's lot, being
the N. W. ¼ of the N. W. ¼ of section 14 of the same town,
and that he cut down a wire fence that day between the
plaintiff's land and Nelson's, which ran north and south
eighty rods, and that the town claimed there was a road
there; that the fence he then had there was in the same
place as the one the defendant cut down. The wire was cut
and moved away into plaintiff's field. He had a fence south
of his barnyard, and one north of it, and a fence running
east and west between his house and barn. A map was put
in evidence showing the location of the plaintiff's house and
barn, and of the fences cut down and removed, and of the
garden.

The plaintiff testified that the road had been traveled
along where the fence was that had been cut down, some

three years previous; that when the defendant came there he explained that the town wanted him to cut the fence down that was in the road. He testified that his barnyard was seven rods square, and one of the fences cut down was on one side of his barnyard; that his barnyard and garden had been from the first where they then were, and that he had had his barn and house there since 1888, but that there was no road or appearance of a road there then, where the line was; that when he commenced living on lot 8 the travel was directly over on Nelson's land, east of plaintiff's, but after the town board came and laid out the road it was along the north and south line, and had been for three years. The plaintiff gave evidence to the effect that he had a garden between his house and barn, in which there was all kinds of stuff,— strawberry plants, rhubarb, etc.; that when they came there to lay the road on Nelson's side of the fence, at that time, it was brush, no broken land; that his land was broken first; two or three years after that, Nelson changed his line; that the plaintiff did not open his line, but maintained his fence there, and his garden extended out from the house to the line.

The defendant admitted that the fence was cut on the line a distance of about eighty rods, and that forty posts were taken down. The title to the land in question was admitted to be in the plaintiff. The evidence, as contained in the record, is extremely vague, uncertain, and fragmentary; and it is almost impossible to get any satisfactory idea of the real situation and relative location of the different objects mentioned. On behalf of the defendant, record evidence was given showing that a highway had been laid out on the north and south line May 27, 1892. On behalf of the defendant, J. S. Crandall testified, in substance, that he was chairman of the board of supervisors in 1892, and was present when the road was laid out on the line in dispute; that there was a fence there, as there is now, but not exactly where it now

is; that there was nothing to interfere with laying the road there west of that line or on the line; that there was some garden there, some corn, and a strawberry bed; that there was space for a highway and garden after the land for the road was taken; that the fences stood east of the line in May, 1892, and stood there about May 10, 1897.

The defendant gave in evidence an order of the supervisors laying out the highway in question, and which awarded $15 damages to the plaintiff. A notice, signed by the supervisors and directed to the plaintiff, dated September 26, 1893, requiring him to remove his fences from within the bounds of said highway within forty-five days after the service of said notice, was served on the plaintiff September 27, 1893. Another like notice or order to the plaintiff, signed by the supervisors, dated October 25, 1896, was served on him on that day, reciting that a certain fence was in the center of the said highway, describing the line thereof, and that the piece of land that lay under said fence, and between the same *and the westerly line of said highway,* was a part thereof; and the said plaintiff was thereby requested to remove said fence beyond the limits of said highway within thirty days of the service upon him of a copy of such order. It was also shown that December 4, 1896, the defendant received from the said supervisors a notice requiring him, as overseer of highways, etc., "to remove all obstructions that encroach upon the said highway," describing it; and the defendant testified that after he got this notice, and on the 9th of December, he went there and cut down the fence. It was shown that the fence cut down was a little east of the line along the center of the highway for about eighty rods. The defendant testified that he cut the fence on the east side of the plaintiff's barn, right on the line, and on the north side one rod in; one piece might be two rods; that the fence was an old one. That it was taken up for the distance of eighty-five rods in length, and four rods at the

Kellar vs. Earl.

north end, and one rod at the south end, was not disputed; and the defendant claimed he cut the parts down and laid the posts and wire in on plaintiff's land.

The court charged the jury that the notices were defective, and that, no proper notice having been given, the defendant could not go in there and tear down the fence, and that the jury should return a verdict for the plaintiff for the amount of damages he had sustained. The defendant excepted to this ruling. The jury found for the plaintiff in the sum of $10, and, a motion by the defendant for a new trial having been denied, the plaintiff had judgment on the verdict, from which the defendant appealed.

For the appellant there were briefs by *W. H. Stafford* and *James J. Lunney*, and oral argument by *Mr. Stafford*.

*Arthur Gough*, for the respondent.

PINNEY, J. The evidence was quite clear to the effect that the highway had been laid out over, upon, and through the inclosed and cultivated lands of the plaintiff, and that he had maintained a fence from an early day, substantially continuously, along, west of, and quite near the said north and south line upon which the highway was laid out, and that he resisted and opposed all attempts to open said highway over his land; but Nelson, who owned the land east of said line, afterwards built or set his fence back from said line easterly in the neighborhood of about two rods. The result was that the public travel could pass along said line upon the lands so fenced out by said Nelson; notwithstanding the plaintiff continued substantially to maintain his fence as before. There had evidently been a considerable contention between Nelson and the town authorities, on the one hand, and the plaintiff, on the other, as to the existence of the highway in question, and whether the plaintiff should remove his fence and open such highway for travel over, along, and upon the intervening strip between his premises

and Nelson's land, where he had maintained a fence, as afore-said, from a very early date.   It will be seen, therefore, that the evidence did not, as in the case of *Bartlett v. Beardmore*, 77 Wis. 356, show that the alleged highway, as against the plaintiff, had become such by user or dedication, but that the rights of the public in and over the *locus in quo* depended wholly upon the validity of the proceedings in laying it out and attempting to open it and appropriate it to public use and travel.

By sec. 1284, R. S. 1878, it is provided that "whenever the supervisors shall have laid out, widened, or altered any public highway through any inclosed, cultivated, or improved lands, and their determination shall not have been appealed from, they shall give the owner or occupant of such lands notice in writing to remove his fences, within such time as they shall deem reasonable, not less than thirty days after giving such notice; but no person shall be required to remove such fences between the first day of April and the first day of November in any year."   And sec. 1337 provides that "no person shall be required to remove any fence, under the" provisions of secs. 1334–1336, inclusive, "except between the first day of November and first day of April, unless the same shall have been made within three months next before the making of the order for the removal thereof."

The laying out of the road over the land of the plaintiff was not a taking or appropriating it to the public use.   The public acquired no right to travel upon it until a further act was done; that is, until it was opened by order of the supervisors.   This, under our statute, is necessary before the public can use the land as a highway; and until the right to use the property is vested in the public it cannot be said to be taken, and remains private property, and the owner can still use the land in the same manner he did before the road was laid out.   *State ex rel. Evans v. James*, 4 Wis. 411.

The orders and notices show upon their face that, when

they were made and given, the fence then existed and was maintained as contended by the plaintiff, and there was no evidence produced by the defendant to show that the highway had been legally opened over and upon the plaintiff's land, or that the fence in question had been built or made within three months next before the making of said orders for the removal thereof.    Both the orders or notices directed to and served on the plaintiff were wholly void, for the reason that they required him to remove said fence between the 1st day of April and the 1st day of November, the first requiring him to remove it within forty-five days after the service thereof, September 27, 1893, and the other, served October 25, 1896, requiring him to remove the same within thirty days after such service on him.    Both orders and notices were nullities.    *State v. Egerer*, 55 Wis. 527; *State v. Clark*, 67 Wis. 229.    By making the order of September 27, 1893, and by serving a copy of it, the supervisors, as the court said in *State v. Egerer, supra*, required the plaintiff to remove his fence during the inhibited period.    This is precisely what sec. 1337, R. S. 1878, provides shall not be done between April 1st and November 1st, yet the order in question was made September 26, and served September 27, 1893; and the same was true as to the order made and served October 25, 1896.

Until a valid notice or order had been served upon him, the plaintiff had a right to use and occupy the *locus in quo*, and to maintain his fences thereon at his pleasure.    It could not be considered an obstruction to the highway until he had been lawfully required by the supervisors to open it. As was held in *State v. Clark, supra*, the service of a void notice would not set the time running against the defendant in which he was by law required to remove his fence; and TAYLOR, J., in delivering the opinion of the court, said: "The statute is clear that a party cannot be required to remove his fences from within the boundaries of a highway

at any time between the 1st day of April and the 1st day of November in any year, and a notice which requires him to remove such fences within such dates is a void notice. R. S. sec. 1337; *State v. Egerer,* 55 Wis. 527." This defect exists in, and is fatal to, both notices. For this reason the defense insisted on by the defendant wholly failed, and the circuit court properly directed the jury to return a verdict for the plaintiff for the amount of damages he had sustained; and the court properly denied the defendant's motion to set it aside and grant a new trial.

Other questions were made and argued, but, upon the whole record, it is entirely clear that the rulings of the circuit court were correct.

*By the Court.*— The judgment of the circuit court is affirmed.