KONKEL, Respondent, vs. TOWN OF PELLA, Appellant.

*April 21—May 10, 1904.*

*Highways: Obstruction: Evidence: Prescription.*

1. Upon the question as to how near a fence came to the traveled track in a road, witnesses who had not attempted to ascertain the exact distance estimated it at from one foot to two feet and a half, but three witnesses, including a competent surveyor, had made careful measurements and found that at no point was the fence nearer than two feet and a half. *Held,* that the court was justified in assuming it to be established that the measured distance was correct.

2. A fence erected in good-faith belief that it marked the line of the abutting owner, being wholly outside the limits of the highway as originally attempted to be laid out, and at no point nearer than two and one-half feet to the traveled track, and not impeding travel therein, is at most a mere encroachment, not an obstruction which may be summarily removed.

3. There having been an attempt—even though an invalid one—to lay out a highway four rods wide, followed by travel generally in accordance therewith, a deviation at one place which made the traveled track extend partly beyond those limits, even though continued for twenty years, did not make a highway by prescription beyond said limits in excess of the actual physical occupation.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Action for trespass in that the town officers caused to be torn down some thirty or forty rods of plaintiff's fence along the southerly side of her land, described as the southeast quarter of the northeast quarter of section 4, in township 26 north and range 14 east, in Shawano county, under the claim that the same was an obstruction in a public highway. It appeared that about 1872 the county board of Shawano county made an attempt, claimed to have been invalid, to lay a highway, which in this locality ran east and west on the middle line of section 4, and appropriating money to open and work the same; that there then commenced public travel approximately upon the line of the road so laid out, but which, opposite the land now owned by plaintiff, was nearly all to the north of the center line of the section, and in several places extended more than two rods to the north of that line by some four or five feet. In only one spot was the inner or south wheel track outside of the two-rod line, and that only a few inches and for a few feet longitudinally. There is no evidence as to whether fences had ever been built on either side of the road at about this point. Plaintiff, having reduced the eastern part of her forty to cultivation, desired to fence the same, and applied to the supervisors for information as to where they claimed the highway to be, and the chairman told

her she might build a fence where she pleased so long as it left out the traveled part of the road. She accordingly built a rail fence approximately, but not accurately, following the line of travel, which at the nearest point approached the northern wheel track to within one and a half to two and a half feet; in other places being eight or more feet distant. The space within what would have been the limits of the high- way as described by the order of the county board, lying south of the traveled track, and opposite plaintiff's premises, while approximately level, was considerably grown up to brush and was characterized by stones, etc., so as to make travel over it, or indeed turning out to the south, difficult. The town took down this fence, and cast it back northward onto the plaintiff's premises, although for nearly all of the space so torn down it was several feet remote from the traveled track. Apparently this was done without any notice to plaintiff.

The trial court instructed the jury that the fence was not an obstruction, but at most was a mere encroachment, and submitted to them only the question of damages. They re- turned a verdict of $50 in favor of the plaintiff, from judg- ment on which defendant appeals.

For the appellant there was a brief by *Wallrich, Dillett & Eberlein,* and oral argument by *M. G. Eberlein.*

For the respondent there was a brief by *Guernsey & Cole,* and oral argument by *L. Cole.*

DODGE, J. After a careful examination of this record, we are convinced of the correctness of the conclusion of the trial court that there was no evidence to establish an obstruction of the highway by any part of plaintiff's fence which was re- moved. The situation of the evidence is not unlike that con- sidered in *Burroughs v. Milwaukee,* 110 Wis. 478, 483, 86 N. W. 159, and *Koepke v. Milwaukee,* 112 Wis. 475, 88 N. W. 238, where the depth of a certain defect in the high-

way was testified to variously by several witnesses (most of them upon mere estimate), but where there was also the testimony of one or more witnesses to actual measurement, not departing so grossly from the estimates but that the latter might have been honestly made; and it was held that there was no evidence properly to be submitted to the jury of dimensions in excess of the measurement. Here the witnesses are in conflict as to how near to the traveled track were two points of the crooked rail fence built by the plaintiff. They make their estimates at from a foot to two feet and a half at these particular points. Their opportunities for judging were those of mere passersby, or those who removed the fence without attempting to ascertain the exact distance. If this were all, it might not be legitimate for the court to adopt one distance rather than another, if it were material; but three men, including a competent surveyor, made careful measurements, and found that two feet and a half was the utmost proximity to the north wheel track of the traveled way of either of these points. This is not so variant from the foot or foot and a half estimate by some of the witnesses as to make it at all improbable that their estimates and their testimony were honest. We think it justified the court in assuming the fact to be established without controversy that the measured distance was correct. Upon such assumption we think the court was justified in holding as matter of law that it was not an obstruction to the traveled highway, it being conceded that at all such points the fence was outside of the limits of any legal highway, except as legality might have been acquired by travel over the line indicated by the wheel tracks in question for a period of more than twenty years. An obstruction, within the statute, has been held to be a structure within the limits of the highway, and such as to impede or seriously inconvenience travel thereon. Unless it be such, a structure in good-faith belief that it but marks the line of the abutting owner is a mere encroachment, not to be dealt with summarily

under sec. 1326, Stats. 1898, but by a process of judicial examination under secs. 1330 *et seq.* *State v. Leaver,* 62 Wis. 387, 22 N. W. 576; *Pauer v. Albrecht,* 72 Wis. 416, 39 N. W. 771; *State v. Pomeroy,* 73 Wis. 664, 41 N. W. 726; *Bartlett v. Beardmore,* 77 Wis. 356, 46 N. W. 494. The evidence is overwhelming that travel even upon the lines of the wheel tracks above referred to was easy and unobstructed. Numerous witnesses, who used it frequently, so testify—even with hayracks or other wide structures. The only evidence offered in conflict is the testimony of two witnesses to the effect that they were apprehensive that their whippletrees might strike the fence, though it appears without dispute that none ever did. There was therefore no evidence that it impeded travel in the ordinary tracks, nor, of course, anywhere to the south of them.

Some attempt is made to contend that, the original attempt to lay out a highway on the center line of the section having been invalid, this road must be considered one solely by prescription, and hence that a strip of land at least wide enough for all the purposes of a highway, including turnouts and the like, if not fully four rods wide, had been acquired by the public, with the traveled track as the center thereof. It may be conceded that where the public, for the statutory period, or for twenty years, have followed a given course of travel with no authority whatever, they have acquired a strip wider than the mere ground over which the wheels persistently pass. *Bartlett v. Beardmore, supra; Randall v. Rovelstad,* 105 Wis. 410, 81 N. W. 819. The logic of such a conclusion is that the conduct of the public has declared their need for a highway, and that a highway is to consist of space enough not only for a single team to pass along, but for teams to pass each other. This inference, however, fails in a case like this, where, as conclusively appears, the travel commenced with an attempted laying out of a distinct four-rod strip, which in this case was bounded by a line two rods each side of the cen-

ter line of the section. Under those circumstances no other inference is legitimate than that it is a declaration by the public that they believe such attempt at laying out a highway to have been valid, and that they purpose to use that strip. Their travel generally in accordance with it has no other significance. If legally laid out, it does not work an abandonment of the ground within the legal limits that they deviate slightly therefrom. Hence there is no necessity for an assumption that the travel over a given course which may at places extend close to, or even exceed, the legal limits, is intended to claim what might be necessary for general purposes of a highway beyond those limits, at least in excess of the actual physical occupation. *Maire v. Kruse,* 85 Wis. 302, 55 N. W. 389; *Randall v. Rovelstad, supra; Warren Co. v. Mastronardi,* 76 Miss. 273, 24 South. 199. No other error than the instruction thus considered is assigned.

*By the Court.*—Judgment affirmed.