NEALE, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 20—March 9, 1909.*

*Evidence: Weight: Highways by user: Limits: Obstruction: Dedication: Instructions to jury: Appeal: Material and immaterial errors.*

1. Where witnesses on one side testified from actual measurement that a post was three feet distant from the traveled track of a highway, while witnesses on the other side testified somewhat indefinitely and from mere recollection that it was nearer, the testimony of the former should be accepted as true.

2. Where a highway by user is established, the wheel tracks and the land included between them do not necessarily designate the limits thereof, since at times, as when teams pass each other or the track is muddy, necessity or convenience may require departure from the main traveled track.

3. A post set three feet from the traveled track of a highway may constitute an obstruction within the meaning of sec. 1326, Stats. (1898), rather than a mere encroachment within the meaning of sec. 1330.

4. Such a post may constitute an obstruction though set between two large stones already in the highway.

5. In an action to recover a penalty for obstructing by posts a highway claimed to have been established by user, a requested instruction to the effect that, if defendant had occupied up to the line of said posts adversely and continuously for a period of twenty years immediately preceding the action, then he had a right to place the posts there, is *held* inapplicable, in the absence of any evidence that after the public had acquired an easement by prescription or otherwise the land had been adversely occupied by defendant for twenty years.

6. An instruction that plaintiff claimed that defendant "obstructed a certain highway" at a point specified, "by setting some posts within said highway," and that "defendant admits the setting of some posts at the place mentioned," could not have been understood by the jury as stating that defendant admitted that the posts were set in the highway, especially in view of further instruction that the jury should find for defendant unless satisfied that the posts were within the limits of the highway as it existed at the time, etc.

7. The presumption of a dedication is not necessary to support an easement acquired by the public by user; but it was a harmless error to charge that a highway by user is founded upon a dedication, which is evidenced by twenty years of adverse use by the public, where the jury found the existence of a highway by user at the place in question.

8. Where the distance between the fences on the sides of a highway established by user only, not by dedication, was in places more than four rods, and the public did not in fact use the entire strip between the fences, it was prejudicial error to charge the jury that the maintenance of such fences for twenty years was conclusive proof of dedication of all land between them.

ERROR to review a judgment of the circuit court for Marquette county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

This action was originally brought in justice's court to recover a penalty for which it is claimed the plaintiff in error (hereinafter called the defendant) became liable by reason of violating the provisions of sec. 1326, Stats. (1898). The alleged violation consisted in placing fence posts in a certain highway in Marquette county in such a manner as to constitute an obstruction therein. The answer alleged title in the defendant by deeds of conveyance and also because of adverse

possession for more than twenty years, and averred that a de termination of the controversy could not be had without the title to the lands referred to being put in issue, the defendant claiming to be the lawful owner thereof and to be entitled to the possession of the same. The proper undertaking was filed and the case was removed to the circuit court, and a trial in that court resulted in a verdict for the plaintiff, in which the amount of the forfeiture to be paid by the defendant was assessed at the sum of $1. The defendant prosecutes this writ of error from the judgment entered upon such verdict, and as signs as error (1) the erroneous admission of evidence on the part of the state against the objection and exception of the defendant; (2) the erroneous rejection of evidence offered by the defendant upon the objection of the state; (3) refusal of the court to grant a nonsuit; (4) refusal of the court to grant defendant's motion for a directed verdict; (5) refusal to instruct the jury as requested by defendant; (6) error in the instructions given to the jury.

*Daniel H. Grady,* for the plaintiff in error.

*D. W. McNamara,* for the defendant in error.

BARNES, J. The errors assigned on rulings on evidence are not substantial and need not be discussed.

The third and fourth errors relate to the refusal of the court to grant a nonsuit and to direct a verdict. It is claimed that these motions should have been granted because the evidence offered by the state, at best, showed that the post nearest the traveled track, as the road was used when the posts were put in the ground, was three feet distant from such track, and con stituted a mere encroachment on the highway and not an ob struction of it. There is evidence tending to show that the post was nearer than three feet to the traveled track, but we accept counsel's argument as sound that inasmuch as the wit nesses for defendant on this point testified from actual mea surement, while those for the state testified somewhat indefi-

nitely and from mere recollection, the evidence of the former should be accepted as true. Counsel urges that in *Konkel v. Pella,* 122 Wis. 143, 99 N. W. 453, this court held as a matter of law that a fence built three feet from the traveled track of a highway constituted an encroachment within the meaning of sec. 1330, Stats. (1898), and not an obstruction within the meaning of sec. 1326. In this case the court in its opinion said that the fence in question was not an obstruction, because it was conceded that at all points "the fence was outside of the limits of any legal highway, except as legality might have been acquired by travel over the line indicated by the wheel tracks in question for a period of more than twenty years," and, further, that "the evidence is overwhelming that travel even upon the lines of the wheel tracks above referred to was easy and unobstructed." The court did not decide that in no case and under no circumstances could an obstacle within three feet of the traveled track constitute an obstruction. If this were so, the parties owning land on either side of a public highway created by user might place their fences three feet from the traveled track and escape prosecution for obstructing the road, although two teams could not pass therein. We do not think that, where a highway by user is established, the wheel tracks and the land included between them necessarily designate the limits thereof. The correct view is taken in *Bartlett v. Beardmore,* 77 Wis. 356, 363, 46 N. W. 494, 496, where it is said:

"Most country roads have a narrow beaten track, but it does not follow that the use is confined to such path. Teams must pass each other, and for that purpose must necessarily depart from the main traveled track. So, when such track is muddy, public convenience requires departure from such track. We cannot hold that the public can acquire no legal right to such sides of the main traveled track by such ordinary user."

Under the testimony it was a fair question for the jury to say whether the posts in controversy constituted an obstruc-

tion or not.  *Jones v. Tobin,* 135 Wis. 286, 115 N. W. 807.
It is argued that the post nearest the traveled track was set
between two large stones that had been placed there at some
prior time, and that if there was an obstruction it was caused
by the stones rather than by the post.  The placing of one
obstruction in the road would hardly justify the placing of
another one at the same point, and the stones might not inter-
fere in the least with the passage of a load of hay, while a
post five or six feet high might.

Error is assigned because the court refused to give the fol-
lowing instruction:

"You are further instructed that if the defendant or his
predecessors in title openly, notoriously, adversely, and con-
tinuously for a period of twenty years immediately preceding
the commencement of this action occupied up to the line
marked by the placing of the posts in question, then he had
a right to place the said posts at the point indicated, and you
should return a verdict in his favor."

Without passing upon the correctness of this instruction as
an abstract question of law, we fail to see how it was appli-
cable to the facts proved on the trial.  The defendant had the
paper title to his land, as we understand the record.  At
least there was no controversy on that point.  The public, if
it had any right in the land where the posts were set, acquired
its easement by user, by grant, by dedication, or by condem-
nation.  It claimed right by user, although some circum-
stances were shown from which dedication might possibly be
inferred as a matter of fact.  In order that the instruction
should be germane the evidence should show that the public
at one time had acquired an easement by prescription or
otherwise, and that after such right became vested in the pub-
lic the land was adversely occupied by the defendant and his
predecessors for twenty years.  We have been unable to find
any such evidence.  The state contended that fences were for-
merly maintained on the line now occupied by defendant's
fence.  The defendant claims that the fence up to about nine

years ago was on the line of the posts, which it is now asserted constitute obstructions in the road. If the state is right in its claim, then there has been no adverse possession by the defendant and his grantor of the strip of land in dispute. If the defendant is right, then it is clear that the public never acquired any easement in the strip.

Error is assigned because the court instructed the jury as follows:

"The claim of the plaintiff is that the defendant on the 27th day of December, 1905, obstructed a certain highway known as the Packwaukee and Portage road, at a point specified, by setting some posts within said highway. The defendant admits the setting of some posts at the place mentioned at or about the time stated."

The criticism on this instruction is that the court told the jury in effect that it was admitted that the posts were set in the highway. The jury could hardly misunderstand the import of the instruction. The court told the jury that it was claimed that the highway had been obstructed by placing posts at a point specified. There was no material dispute about where the posts were set, and when the jury was informed that it was admitted that the posts were set at the "place mentioned," the latter words could only be understood as referring to the place where it was conceded the posts were, and which is referred to in the first part of the instruction as the "point specified." The jury was instructed to find for the defendant "unless satisfied by a preponderance of the evidence . . . both that the posts or one or more of them set by the defendant were within the limits of the highway as it existed at the time, and that such of the posts or any of them, if any there were, as were within the highway endangered, impeded, or seriously inconvenienced travel on the highway." In view of the instruction last quoted the jury could not have been misled by the instruction complained of, even though it be conceded that there is some ambiguity in the language used.

Error is assigned because the court gave the following instruction to the jury:

"In case of a highway by user the highway is founded upon a dedication by the abutting owners, which dedication is evidenced by twenty years of uninterrupted use by the public openly, notoriously, and adversely."

As an abstract proposition of law this instruction is not correct under the decisions of this court in *Frye v. Highland,* 109 Wis. 292, 299, 85 N. W. 351, and *Randall v. Rovelstad,* 105 Wis. 410, 426, 81 N. W. 819. The presumption of a dedication is not necessary to support an easement acquired by the public by user. *State v. Lloyd,* 133 Wis. 468, 113 N. W. 964. The instruction, however, was harmless. If there was a highway at the place in question established by user, it was immaterial for the purposes of the case whether the land so used had been dedicated by the owner or not.

Error is also assigned because the court instructed the jury as follows:

"In case a highway becomes established by uninterrupted use for twenty years, the uninterrupted maintenance for this period of a fence or other obstruction indicating the line to which the owner dedicates for public use fixes the fence or obstruction as the line of the highway."

This instruction certainly is too broad. In new localities where land is cheap, fences are often built more with reference to the contour of the land than with reference to the usual. and customary limits of highways. Numerous instances could no doubt be found where the distance between the fences on either side of the highway is two or three times as great as the width of the ordinary road. To say in such a case that, after the lapse of twenty years, there is a conclusive presumption of law that the land between the fences has been dedicated to the public, is hardly reasonable. The public has no use for such land for highway purposes, and the intention to dedicate to the public in the first instance was lacking.

The instruction in question is not in harmony with *Stricker v. Reedsburg,* 101 Wis. 457, 463, 77 N. W. 897, or with *Randall v. Rovelstad, supra.* There is evidence in this case tending to show that the distance between the fences as originally constructed was more than four rods, at least in some places. Where such a condition is disclosed, and where it is apparent that the public did not in fact use the entire strip between the fences, we think it is erroneous to say that the maintenance of such fences for a period of twenty years furnishes conclusive proof of dedication of all land located between them.

It has been troublesome to determine with any degree of satisfaction whether the erroneous instruction was prejudicial to the defendant. If not, no reversible error resulted therefrom. The case was tried by attorneys, and perhaps jurors, who were apparently familiar with the *locus in quo.* Much of the testimony is given with reference to objects entirely unfamiliar to this court. What we take to be an eighth line is referred to throughout the testimony as a quarter line. Directions are not correctly stated. The printed case was prepared in palpable violation of the rules of this court, the entire evidence in the form of question and answer being printed. This fact, taken in connection with the ambiguous nature of the evidence in some particulars, has made it laborious and difficult to arrive at a satisfactory conclusion as to what was in fact proved by the testimony offered. There is evidence to show that a rail fence was built on the *Neale* side of the road in 1864. The evidence does not show how long such fence was maintained, or when it was replaced, or where the new fence was built if the old one was replaced, or whether any considerable period elapsed after such fence fell into decay and before a new one was built. There is evidence tending to show that some of the remnants of such fence are still discernible along the line where the defendant set his posts. There is also evidence that defendant built his fence a few years ago some distance further from the road than the rail

fence was originally built, while there is evidence also tend-
ing to show that such fence was in fact built upon the line of
the rail fence.   Then there is evidence tending to show that
the fence was replaced once or twice, but when it was re-
placed, or where the new fence was built, does not appear.   It
was testified to that a fence existed thirty years ago on the
*Neale* side, but it does not appear when it was built, or just
where it stood.   It is not always clear whether the evidence
on this point relates to the fence on the *Neale* side of the
road or to the fence on the opposite side, although there is
evidence tending to show that a fence was also built on the
opposite side about the year 1864.   It is impossible for this
court to say, and we do not think the evidence shows, that a
fence was maintained in one location on the *Neale* side of the
road at the point in controversy continuously for the period of
twenty years.   If there was no such fence, then the instruction
might not be harmful, because there was no evidence before
the jury to which the instruction could apply.   If there was
such evidence, and the jury came to the conclusion that the an-
cient fences were built upon the line testified to by witnesses
for the state, then the instruction might well be misleading
and prejudicial, because the jury was informed as a matter of
law that the posts were set within the limits of the highway, if
the old fence was located where the witnesses for the state
placed it.   It did not necessarily follow, because of such find-
ing, that the posts constituted an obstruction, but if the jury
became satisfied that the posts were in fact set within the
limits of the highway, it might not be apt to draw a refined
distinction between what constituted an obstruction and what
only amounted to an encroachment.   Under the evidence in
the case we think a highway by user was established and not
one by dedication.   Under such evidence its boundaries could
have been established by user only.   Telling the jury that all
the land between certain fences, if they were found to exist,
constituted a highway, extended the limits of the road beyond
where the evidence warranted its extension.   We do not hold

that the erection and maintenance of fences along either side of the highway may not in any case raise a conclusive presumption of dedication, but we do not think that the evidence here warranted any such presumption, and certainly the bare facts recited in the instruction do not establish one. While the evidence is very uncertain to us upon the existence and location of the fence, it might not have been so to the jurors who were familiar with the road. The fact that the court charged upon the subject indicates that he thought there was some evidence bearing on it, and the charge might well lead the jury into making the same assumption. If the fences in fact existed for the requisite period, the jurors would almost inevitably take into account their own knowledge of the fact. By the instruction complained of the defendant might well be largely deprived of his defense that the posts were not set within the limits of the highway. It is true the jury was told not to convict unless the posts were found to have been placed in the highway in such a manner as to impede, endanger, or seriously inconvenience travel, but we apprehend it is much easier to defend an action of this kind on the ground that the obstacle complained of was without the limits of the highway than it is by attempting to show that the obstacle constituted an encroachment and not an obstruction. In the one case the party justifies his act; in the other he practically admits doing that which he has no right to do, but seeks to minimize his shortcoming. We think the instruction was erroneous.

Other errors are assigned, but they are not likely to arise on a subsequent trial, and no useful purpose would be served by discussing them. Because of the error in giving the instruction under discussion the judgment must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial. The clerk is directed to tax no costs for printing the case, because the same is prepared in manifest violation of the rules of this court.