HERLITZKE, Respondent, vs. LA CROSSE INTER-URBAN TELEPHONE COMPANY, Appellant.

*February 1—February 21, 1911.*

*Negligence: Personal injuries: Telephone wire hanging across highway: Evidence: Instructions to jury.*

1. In an action for injuries to a traveler on a highway, caused by a telephone wire hanging loosely across the highway within a few feet of the ground, a finding by the jury that such position of the wire was due to negligence on the part of defendant is *held* to be sustained by the evidence.

2. Trial courts are not required to adopt any particular phrasing of a rule of law given to the jury, and the mere refusal to give a requested instruction which correctly states the law is not error if it is in fact embodied in substance in the general charge.

APPEAL from a judgment of the circuit court for La Crosse county: GEORGE GRIMM, Judge.    *Affirmed.*

Action for personal injuries.    On June 3, 1908, the plaintiff was being driven over one of the public highways of La Crosse county, Wisconsin, known as the old Mindoro road, when the top of her buggy was caught by a telephone wire of the defendant company, which hung loosely across said highway, causing the horses to become frightened and run away, and injuring the plaintiff.    The jury by special verdict found (1) that the low position of the telephone wire across the highway at the time and place of the injury was due to a want of ordinary care on the part of the defendant; (2) that such want of ordinary care on its part was the proximate cause of the injury; (3) that plaintiff was not guilty of any want of ordinary care; and (4) damages.    From a judgment entered on such special verdict the defendant appealed.

For the appellant there was a brief by *McConnell & Schweizer,* and oral argument by *C. H. Schweizer.*

*J. E. Higbee,* for the respondent.

VINJE, J.    The defendant earnestly contends that there is no evidence to sustain the finding of the jury that the low position of the telephone wire across the highway was due to any want of ordinary care on its part.    Some distance south of the place of the accident the highway ran in a northerly direction with the telephone line on its west side.    It then turned nearly west, making almost a right angle, the telephone post at which point will hereafter be designated as A, and ran in a westerly direction for about 500 feet, with the telephone line on the south side; then again in a northerly direction, making little more than a right angle, the telephone pole at which point will be designated as C.    At the point C the line crossed the road and continued on the east side thereof.    The first pole east of C will be known as B, and the

first pole north of C as D. From this it will appear that a line connecting B, C, and D would form a triangle with the right angle at C, and that if the wire should become detached from C it would hang from B to D, and across the road east of where it would if hung from C to D. A short distance east of the point where the wire hanging from B to D would cross the road is a bridge. Plaintiff was being driven in a

westerly direction, and just beyond the bridge the wire caught the buggy and the injury occurred. The pole at the point A was guyed by a wire running across to the east side of the road, and defendant's theory, supported by evidence, was that this guy wire was struck by a heavy oak limb the night before, causing the pole to straighten up and so produce a tension on the wire from A to C, breaking or pulling off the insulator at C and so allowing the wire to hang from B to D. The wire was not wound around the insulator, but tied thereto by a separate wire, thus allowing a stretching of the wire from A to C.

Plaintiff's theory, also supported by evidence, was that the pole C was so decayed and worn that it either broke off entirely or else bent to the east sufficiently to give enough slack to permit the wire to come within four or five feet of the ground where it crossed the highway. Defendant's manager testified that about three years before the accident he inspected the pole C and found it then somewhat decayed, about half an inch of rot. He put guy wires on it for the purpose of holding it in position. After that no inspection was made of the pole as to soundness or sufficiency up to the time of the injury. There was a conflict in the evidence as to whether or not it was then standing.

It is apparent from the above description of the line that the pole C was subjected to an unusual amount of strain, and that if the wire should become disconnected from it, or if the pole should be pulled out of position in the direction of the strain on it, the wire would in all probability interfere with and endanger public travel on the highway. There was evidence to show that sometime after the injury occurred the pole was found lying on the ground near where it had stood and that it was very rotten at the butt. One witness testified that "when they sawed it off they broke off a lot of rotted places, and coming home in the machine some more were broken off. . . . It was weak like all rotten wood."

In view of the whole evidence, and taking into consideration the necessity for a strong pole at C and the testimony to the effect that it was somewhat rotten three years before the injury occurred; that it had not been inspected since; and the evidence as to the condition of the pole found there shortly afterwards, as well as the apparent peril to travel from any sagging of the wire where it crossed the highway, we cannot say that the jury were not warranted in finding negligence on the part of the defendant. It was its duty to be reasonably vigilant in the inspection of its line, and especially so at a place such as the one in question where the

peril to travel resulting from a sagging of the wire was so obvious. It must be admitted that the theory of the defendant as to what caused the wire to sag was more or less plausible and supported by evidence, but it was peculiarly the province of the jury to determine, under the conflicting evidence, what was in fact the real cause of the injury. Plaintiff's theory was at least equally plausible, and, as we have said, supported by evidence sufficient to sustain the verdict. In such a situation the finding of the jury is conclusive. *Kortendick v. Waterford,* 135 Wis. 77, 115 N. W. 331.

Defendant assigns error because the court refused to give the following instruction in connection with question 1 of the special verdict:

"You are not permitted to guess at your verdict in answering this question nor in answering any other question in this verdict herein. Verdicts must be based on evidence, not on mere conjecture, and unless you are satisfied to a reasonable certainty that the low position of the telephone wire across the highway at the time and place of the injury was due to a want of ordinary care on the part of the defendant company in constructing and maintaining its telephone line at the point in question, you are instructed to answer this question 'No.' "

The court in its charge to the jury fully and fairly stated the defendant's theory of the case and, in connection with its instruction on the first question of the special verdict, said:

"You should bear in mind that it is not necessary for the defendant to prove that it exercised ordinary care. On the contrary, the duty rests entirely on the plaintiff to prove that it did not, and that its failure in that regard was the cause of the wire being in the fallen and dangerous condition shown by the evidence at the time and place of the injury."

The jury were further instructed relative to this question that before they could answer it in the affirmative they must be satisfied to a reasonable certainty from a preponderance of the evidence that the falling and lowering of the pole line re-

190    SUPREME COURT OF WISCONSIN.    [FEB.

Herlitzke v. La Crosse Inter-Urban Telephone Co. 145 Wis. 185.

sulted from a defective condition thereof, which, in the exercise of ordinary care, the defendant ought not to have permitted to exist; that the burden of proof was upon the plaintiff; and that the jury must answer the question in the negative unless convinced to a reasonable certainty by a preponderance of the evidence that it should be answered in the affirmative.

While it is true that the portion of the charge quoted does not in express terms say that the jury cannot base their verdict upon mere conjecture or that they are not permitted to guess, still we think the only reasonable inference that sensible men could draw from the charge given would be that they must base their verdict upon the testimony in the case, and that from such testimony they must be satisfied there was a want of ordinary care on the part of the defendant before the question could be answered in the affirmative. Trial courts are not required to adopt any particular phrasing of a rule of law given to the jury, and error cannot be predicated upon the mere refusal to give a requested charge which correctly states the law, if it is in fact embodied in substance in the general instructions given. *Jones v. Monson,* 137 Wis. 478, 488, 119 N. W. 179.

*By the Court.*—Judgment affirmed.