OTTMAN, Appellant, vs. WISCONSIN-MICHIGAN POWER COMPANY, Respondent.

*April 4—April 30, 1929.*

For the appellant there were briefs by *Ryan, Cary & Ryan* of Appleton, and oral argument by *Paul V. Cary.*

For the respondent there was a brief by *Homer H. Benton* of Appleton, attorney, and *Shaw, Muskat & Sullivan* of Milwaukee, of counsel, and oral argument by *Mr. Benton* and *Mr. Carl Muskat.*

OWEN, J. The plaintiff is a painter. On the 21st day of June, 1928, he was engaged in painting a house in the city of Appleton. In order to reach the gable he placed a ladder on a balcony and raised it through electric wires entering the house well up towards the peak of the gable. There were three wires fourteen or fifteen inches apart. He climbed the ladder until he reached these wires and made a survey of the situation. In order to paint the peak of the gable he found that it would be necessary for him to project his body through these wires. He knew they were electric wires and that they were charged with an electric current, although he testified that the wires seemed to be properly insulated. He also testified that he knew it was dangerous for his body to come in contact with the two wires through which he had inserted his ladder. Nevertheless he continued to advance. He took hold of one wire with his hand to assist in balancing himself as he ascended. He then turned his body sidewise in the hope or belief that in this position he could proceed without forming contact with both wires. However, his other arm came in contact with the other wire, resulting in a shock which caused him to fall from the ladder to the roof of the balcony and sustain severe injuries.

When first installed these wires were covered with a weather-proof covering. They had remained there for at least eight years, during which time they had never been inspected as to the condition of their insulation. The company makes no inspection of the insulation of overhead wires. The defendant makes no practice of renewing weather-proof covering. In short, they install their wires and forget about them so far as insulation or weather-proof covering is concerned.

At the close of the evidence the court directed a verdict in favor of defendant, holding that, as a matter of law, it appeared that it was not guilty of negligence, and that the plaintiff was guilty of contributory negligence. Both of these rulings are challenged on this appeal.

The trial court was in error in holding that the evidence did not present a jury question upon the defendant's negligence. Electricity is a powerful and subtle force. Electric wires are highly dangerous agencies, and it is well settled that companies generating and transmitting electricity over their wires are required to exercise a high degree of care and caution in order to prevent injury. "When a company has properly constructed its system and strung its service wires, its duty does not cease, but it must thereafter exercise reasonable care with respect to supervision and inspection." *Dansbery v. Northern States Power Co.* 188 Wis. 586, 591, 206 N. W. 882. That this is a correct statement of the law will be seen by a consideration of *Braun v. Buffalo Gen. Elec. Co.* 200 N. Y. 484, 94 N. E. 206. The opinion in that case reviews many of the authorities, all holding the duty of an electric company substantially to be as above stated. In that case the court says:

"The fundamental and general principle that a company like respondent, if reasonably chargeable with knowledge, or in the exercise of reasonable prudence bound to anticipate, that people may lawfully come in close proximity to its wires either for purposes of business or pleasure, is under obligation to exercise care to keep the latter in a safe condition, is abundantly established." Page 492.

In that case an electric company strung its wires over a vacant portion of a city lot twenty-five or twenty-six feet from the ground. The owner of the lot, a number of years thereafter, proceeded to erect an apartment building under these wires. During the construction of the building a workman on the second floor came in contact with these wires and was injured. The court, in holding that the question of the negligence of the defendant was for the jury, said:

"Little need or can be said about the condition of the wires, for if the respondent owed any obligation whatever of making them safe it would scarcely have been more negligent if, instead of allowing them to remain uninspected and unrepaired as it did, it had strung and maintained ab-

solutely naked wires. The only question which is at all close is whether the respondent in the exercise of reasonable care and foresight should have apprehended that the premises over which the wires were strung might be so used as to bring people in contact with them, and whether, therefore, it should have guarded against such a contingency." Page 490.

The wires here in question carried electric power into the house. The most ordinary foresight should have anticipated that this house would be painted from time to time, and that in order to reach the peak of the gable workmen would be obliged to come into very close proximity to the wires, and that unless such wires were kept properly insulated some one might be injured as a result thereof. The negligence of the defendant was plainly a jury question.

But the same considerations also convict the plaintiff of negligence. He admitted that he knew these wires were electric wires; that they were charged with electricity, and that it would be dangerous to come in contact with both of them. Notwithstanding this, he took the chance and received a shock from which serious injuries followed. It will not do to place the sole duty to exercise ordinary care to prevent injury from electric wires upon the electric company. Those obliged to work in close proximity to such wires must also use due care. They cannot accept the consequences of their own recklessness and compel an electric company to pay therefor. Not only plaintiff's conduct in trying to work his way through these wires without coming in contact with both of them, but his frank admissions, show that he realized that he was embarking upon a dangerous undertaking in attempting to project himself between these two wires. Upon the record there is no room for a conclusion that in so doing he was acting in the exercise of ordinary care. In the face of danger such as this, fully appreciated, one should not accept challenges or gamble with consequences. *Huber v. La Crosse City R. Co.* 92 Wis. 636, 66 N. W. 708;

*Billington v. Eastern Wis. R. & L. Co.* 137 Wis. 416, 119 N. W. 127; *Glander v. Milwaukee E. R. & L. Co.* 155 Wis. 381, 144 N. W. 972; *Wilger v. Wisconsin T., L., H. & P. Co.* 160 Wis. 654, 152 N. W. 414; *Bonniwell v. Milwaukee L., H. & T. Co.* 174 Wis. 1, 182 N. W. 468.
Although the facts involved in these cases are not identical with the facts here presented, the principles there announced are plainly applicable here. A case quite similar in its facts is *Weir v. Haverford E. L. Co.* 221 Pa. St. 611, 70 Atl. 874. Upon this latter ground the court correctly directed a verdict in favor of defendant.

*By the Court.*—Judgment affirmed.