PHELPS, Respondent, vs. WISCONSIN TELEPHONE
COMPANY, Appellant.*

*October 11—November 9, 1943.*

* Motion for rehearing denied, with $25 costs, on January 18, 1944.

For the appellant there were briefs by *Francis J. Hart* and *Miller, Mack & Fairchild,* and oral argument by *J. G. Hardgrove* and *Erwin E. Nemmers,* all of Milwaukee.

*Harry V. Meissner* of Milwaukee, for the respondent.

WICKHEM, J.   Since the principal question upon this appeal is whether the evidence sustains the jury's verdict, a review of the facts will be necessary.

Frank Phelps, plaintiff's husband, was an employee of the town of Wauwatosa.   He was killed on April 2, 1941, while operating a road grader belonging to the town.   The accident occurred when Phelps backed his grader into a guy wire supporting a pole of the defendant company.   The guy wire struck the back seat of the grader and crushed Phelps against the steering wheel.   The negligence charged by plaintiff and found by the jury related to the absence of a guard on the ground end of the guy wire in question.   There was concededly no guard upon the wire.   The jury found, (1) that the guy wire was exposed to traffic; (2) that it was placed in a public highway; (3) that it obstructed the public use of the highway; (4) that it was so placed as to incommode the public use of the highway.

It will thus be seen that the case largely turns upon the location of the guy wire with relation to the highway and to traffic, generally.

The accident happened in Clarke's subdivision which lies on the south side of West Hampton road and has a dimension of about 1,145 feet, east and west, and about 1,750 feet, north

and south, so far as the plat indicates. North One Hundred Seventeenth street, formerly called Pierce avenue, runs south from West Hampton road to the south line of the subdivision. Actually, the road as opened, improved and used runs a bit south of Spruce street. The most southerly east-and-west street shown on the plat is a marsh area which has never been developed, and is not available for residential or industrial uses without extensive filling and drainage. In 1939 there were demands for telephone service to lots which had been sold on the east side of North One Hundred Seventeenth street and defendant Telephone Company erected ten poles from West Hampton street south along the east side of North One Hundred Seventeenth street. The last customer served was one Eilbes whose lot was near the southern end of the graded portion of North One Hundred Seventeenth street and in the block just north of Spruce street. The Telephone Company placed a pole to serve Eilbes, put a guy pole south of Spruce street and supported this with the guy wire involved in the accident. The graveled portion of North One Hundred Seventeenth street ends in the vicinity of the guy pole. There is claimed to be an issue of fact whether it extends south of the guy wire or whether it ends at the guy pole. No curb or sidewalk was erected in the vicinity of the pole, but had there been a sidewalk and curb, both guy pole and guy wire would be in the portion of the highway between the curb and the sidewalk. The stake for the guy wire is approximately twenty feet south of the guy pole. The guy wire was not protected by a guard on the ground end. Safety order 1282E of the State Electrical Code provides:

"The ground end of all guys attached to ground anchors exposed to traffic shall be provided with a substantial and conspicuous wood or metal guard not less than eight feet long."

This order was not complied with and defendant's position is that the order is not applicable because the guy wire was not exposed to traffic. From the evidence it appears that Phelps

drove his grader which was nineteen feet in length and weighed from eight thousand to nine thousand pounds south on North One Hundred Seventeenth street to the vicinity of the guy wire. He evidently then turned to the west and backed at least once and perhaps more than once to turn around, since the vicinity of the pole was the limit of the grading activity. In the course of this operation he backed into the guy wire.

Upon these facts the principal question is whether there is any evidence that the guy wire was exposed to traffic. If it was not, the safety order requiring a guard is wholly inapplicable, and the guy wire could neither obstruct nor incommode public travel (although if an affirmative answer were to be given to this question there would still be a question whether the guy wire could be said to obstruct or incommode public travel). The principal question is, of course, determined by the location of the guy wire with reference to the highway and to the state of traffic in the vicinity. A careful examination of the record satisfies us that the answers of the jury to these questions are not sustained by the evidence. While photographs are to be dealt with with some caution, we consider it evident from those received in this case that such improvement as there was of North One Hundred Seventeenth street ended at, or approximately at, the telephone pole.

A very strong claim is made that under sec. 80.32, Stats., there was a discontinuance of the highway south of the telephone pole because for a period of more than four years from the time it was laid out, it was never opened, traveled, or worked upon, and no highway fund expended for a period of five years. We shall pass that point, however. There is no evidence which in our judgment would warrant the jury in concluding that there ever was any public travel on North One Hundred Seventeenth street south of the guy pole. One or two witnesses testified that some cars had proceeded south past the pole and guy wire. Most of this evidence relates to cars that proceeded south along North One Hundred Seven-

teenth street, found that the street did not go through, turned around in the vicinity of the guy wire or even south of that, and occasionally got mired in the process. However, this showing of sporadic and occasional use south of the pole by persons operating under the mistaken assumption that the road led some place is not a showing that there was public travel on this highway, and it is even further from a showing that the guy wire, which under any construction of the evidence was not in or immediately adjacent to a traveled part of the highway itself, was exposed to traffic, as that term is used in the safety order. That the wire was so exposed is sought to be shown by the same evidence. We are not impressed with the claim that this testimony is significant. Had cars been driven further south beyond the thorn-apple bush where nobody claims that there was any highway, the driver could not by this process expose this territory to traffic or constitute poles or other structures in that vicinity obstructions or inconveniences to public travel. Neither can this be done so far as the boulevard is concerned. There is some evidence that a footpath existed about three feet to the east of the pole and that children used this as a short cut to school. This does not establish that the guy wire is exposed to pedestrian traffic, and if it did, it would not have any tendency to indicate that it was exposed to vehicular traffic.

Many photographs of the location of the telephone wire and guy pole were offered as exhibits by the parties and they indicate the situation beyond reasonable debate. There may be some question whether this road did not have gravel on it for a foot or two south of the telephone pole, but that is all that can be made of the evidence. To all substantial intents and purposes, the road ends at the telephone pole. The platted portion of North One Hundred Seventeenth street south of the pole was never graded, filled, or otherwise improved as a road, and there was neither traffic nor public travel upon it. The occasional and sporadic use of the portion south of the

pole by persons who for the most part did not, until that point, perceive that they were on a dead-end street, neither exposed the portion south of the pole to traffic nor constituted public travel of this portion. For whatever it may be worth, it is to be noted that these cars were all southbound and kept to the other side of North One Hundred Seventeenth street— well out of the way of the wire. The very fact that this grader was backing up and turning around in the vicinity of the guy pole indicates that its grading operation was complete at or about the vicinity of the pole. It could not, in any case, be held that the guy wire obstructed or incommoded public travel, even if the street was found to run past the pole and guy wire. In connection with this, see *Roberts v. Wisconsin Telephone Co.* 77 Wis. 589, 46 N. W. 800. *Druska v. Western Wis. Tel. Co.* 177 Wis. 621, 189 N. W. 152, cited by plaintiff is distinguishable. There the pole was within a few inches of the traveled path and a very slight variance in course would cause a collision with it. Here the wire was safely within the boulevard.

It follows from this that the judgment must be reversed and cause remanded with direction to dismiss plaintiff's complaint. This determination renders it unnecessary to discuss the other and very numerous contentions of defendant.

Defendant's brief does not satisfy the recent rules of this court with respect to a statement of the questions involved. Defendant, under the head "Questions Involved," has stated seventeen detailed questions which are nothing more than assignments of error in the form of questions. They do not attempt to state the ultimate questions upon the appeal. The draftsman of the brief recognizes this on page 34 of his brief, by stating that several of these questions may be argued together. The brief states:

"Thus Nos. 1, 3, 4 and 6 all deal with the question of whether a finding of negligence on the part of the defendant can be sustained.

"Nos. 2, 5 and 7 all deal with the question whether, assuming negligence, a finding against the defendant on the issue of proximate cause can be sustained.

"Nos. 8 and 9 deal with contributory negligence and comparative negligence.

"Except for No. 17, those which follow deal with errors the correction of which might call only for a new trial."

If questions can be so grouped for discussion, then the head under which they are argued can and should be stated as the question involved. The new rules were drafted with great care by the court for the purpose of eliminating excess printing costs and of giving to the court a quick and accurate guide to the real issues of the case. In addition to this, the brief is longer than fifty pages, and we are of the view that it is unnecessarily long. Since in the foregoing respects the brief does not conform to the rules no costs will be allowed for its printing.

The reply brief was filed without permission first obtained. To the extent of about half of its twenty-seven pages, the reply brief presents useful matter in reply to plaintiff's brief. Costs may be allowed for printing this much of reply brief. The balance of it is a mere repetition of contentions already adequately covered in defendant's brief.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint. Defendant's costs to be limited as indicated in the opinion.