GRAY, Appellant, v. WISCONSIN TELEPHONE COMPANY, Respondent.

*February 3—March 1, 1966.*

238

For the appellant there were briefs by *Donald W. Kaatz,* attorney, and *Paul R. Nesson, Jr.,* of counsel, both of Madison, and oral argument by *Mr. Kaatz.*

For the respondent there was a brief by *Geisler & Kay* and *Robert J. Kay,* all of Madison, and oral argument by *Robert J. Kay.*

BEILFUSS, J. The issues are (1) should the appeal be dismissed because the transcript does not include the testimony and exhibits relevant to the issues raised on appeal, (2) was it prejudicial error not to give the instruction setting forth sec. 182.017 (2), Stats., and advising the jury that a violation of the statute constituted negligence as a matter of law?

Aside from the contention that the appeal should be dismissed, the issues involve the construction of sec. 182.017 (1), (2), Stats., and its application to the facts as we have them in the partial transcript.

"182.017 TRANSMISSION LINES; PRIVILEGES; DAMAGES. (1) *Right of Way For.* Any domestic corporation organized to furnish telegraph, telephone, service or transmit heat, power or electric current to the public or for public purposes, and any co-operative association organized under chapter 185 to furnish telegraph, telephone or transmit heat, power or electric current to its members,

may, subject to reasonable regulations made by any city or village through which its transmission lines or systems may pass, construct and maintain such lines or systems with all necessary appurtenances in, across or beneath any public highway or bridge or any stream or body of water, or upon any lands of any owner consenting thereto, and for such purpose may acquire lands or the necessary easements; and may connect and operate its lines or system with other lines or systems devoted to like business, within or without this state, and charge reasonable rates for the transmission and delivery of messages or the furnishing of heat, power or electric light.

"(2) *Not to Obstruct Public Use*. But no such line or system or any appurtenance thereto shall at any time obstruct or incommode the public use of any highway, bridge, stream or body of water."

The record consists of the complaint and answers, the charge to the jury, the verdict, judgment, motions after verdict, requested special verdicts and instructions, the trial court's memorandum opinion on motions after verdict, and its ruling on the requested instruction. It does not contain the testimony or the exhibits.

The plaintiff-appellant noticed the partial transcript and the issues he sought to raise on appeal; the defendant, by motion, requested that plaintiff be required to furnish a transcript of the testimony and exhibits; the defendant's motion was denied and the partial transcript approved by the trial court.[1]

This appeal will not be dismissed because of the partial transcript but our review must be limited to the record. Ordinarily when the transcript (formerly designated the bill of exceptions) does not include the testimony and exhibits, our review is limited to a determination of whether the judgment is in accord with the verdict.[2]

[1] For statutory procedures for partial transcripts see secs. 274.117 and 274.118, Stats.

[2] See *Ramminger v. State Highway Comm.* (1963), 22 Wis. (2d) 194, 125 N. W. (2d) 406, and cases cited therein.

In *Stelloh v. Liban* (1963), 21 Wis. (2d) 119, 122, 124 N. W. (2d) 101, we stated:

"The appeal comes before us without a bill of exceptions. Without a bill of exceptions, which is now designated a transcript of the reporter's notes by the new rules of this court, sec. 251.25, Stats., the scope of our review is necessarily confined to the record before us. *Nichols v. United States Fidelity & Guaranty Co.* (1961), 13 Wis. (2d) 491, 109 N. W. (2d) 131. Obviously, if no testimony is preserved on appeal, this court is powerless to review a question of fact dependent upon it or to determine the sufficiency of the evidence to support the verdict or the findings. In such cases we have said the only question is whether the judgment is supported by the pleadings and the findings or the verdict, *Weyerhaeuser v. Earley* (1898), 99 Wis. 445, 75 N. W. 80; *Parke, Austin & Lipscomb, Inc., v. Sexauer* (1931), 204 Wis. 415, 235 N. W. 785; or whether the findings support the judgment, *St. Joseph's Hospital v. Withee* (1932), 209 Wis. 424, 245 N. W. 128. See also cases in 6 Callaghan's, Bryant, Wisconsin Pleading and Practice (3d ed.), p. 500, sec. 52.85. However, in this case the question raised is one of law, discussed and decided in the written opinion of the trial court which is a part of the record before us. The question may thus be considered by this court within the limitations of the record."

The memorandum on motions after verdict does, in a limited manner, discuss the facts sufficiently to allow us to give consideration to the appellant's alleged errors of law. The memorandum sets forth: "It was obviously the wire in question which did obstruct the highway at the time and place in question and therefore if the statute invoked strict liability on the utility, there was no issue for the jury. . . ."

The undisputed facts as we have them before us are limited to this extent—the defendant is a public utility and maintains telephone lines, poles and other appurtenances along a public highway; a guy wire for a transmission-line pole was erected and strung so as to extend

from the transmission pole over and above the highway and anchored on a stub pole on the opposite side of the highway. At a time and in a manner unknown to us the stub pole broke and fell which in turn allowed the guy wire to sag down so as to obstruct the highway. The plaintiff struck the sagging guy wire and was injured.

The jury found the plaintiff was not negligent—that finding must stand. The jury further found that defendant utility company was not negligent. The trial court fully instructed the jury as to duties of the utility company to use ordinary care in the inspection and maintenance of its equipment and specifically as to the stub pole and guy wires so as to keep them in a safe condition. The finding by the jury that defendant was not negligent (namely, that it did not fail to use ordinary care) in its duty to inspect and maintain its stub pole and guy wire is also conclusive in the absence of the testimony, unless the trial court erred in not instructing the jury as to sec. 182.017 (2), Stats.

Plaintiff's argument and certain statements by the trial court indicate that the question of strict liability was raised. The record does not bear out this indication. Plaintiff's complaint was couched in terms of negligence, as were his requested instructions and his issues raised to justify the submission of a partial transcript. Nothing in the record indicates that strict liability was ever in issue, and on oral argument plaintiff conceded that he understood no difference between strict liability and negligence *per se*. Plaintiff has raised the issue of negligence *per se* regardless of any confusion in language.

Plaintiff argues that violation of sec. 182.017 (2), Stats., *supra*, is negligence *per se*. Since the trial court conceded that the wire obviously obstructed the highway plaintiff argues that there was negligence as a matter of law.

Restatement, 2 Torts (2d), p. 37, sec. 288 B, considers the effect of a violation of a statute:

"(1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

"(2) The unexcused violation of an enactment or regulation which is not so adopted may be relevant evidence bearing on the issue of negligent conduct."

This section does not require that every violation of a statute is negligence *per se*. Sec. 286 of the Restatement, *supra,* discusses when the courts should adopt the legislation as defining a standard of conduct, at page 25:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

Our question then becomes whether sec. 182.017 (2), Stats., which imposes no penalty or any civil liability, has any application in a civil lawsuit. Restatement, 2 Torts (2d), p. 26, sec. 286, comment *d* provides:

"*Where no provision for civil liability.* The enactment or regulation may, however, provide only for criminal liability, and not for civil liability; or in rare instances it may merely prohibit certain conduct, and contain no provision for any liability at all. In such cases the initial question is whether the legislation or regulation is to be given any effect in a civil suit. Since the legislation has not so provided, the court is under no

compulsion to accept it as defining any standard of conduct for purposes of a tort action."

This Restatement comment further indicates that situations will be rare where a court will consider legislation directed at safety of persons to be so obsolete or unreasonable so as not to apply it, but courts are free to do so.

The plaintiff contends that sec. 182.017 (2), Stats., must be viewed as a safety statute which has been violated. Defendant urges, however, that the statutory language cannot be read literally. It argues that the statute applies literally to the original construction and placement of the systems, but that once they are properly constructed, the duty of ordinary care applies on maintenance. Thus, it is negligence *per se* to erect a telephone pole in one of the travel lanes of the highway, or to run a line so as to obstruct the highway.

The legislative history of sec. 182.017, Stats., was not specifically alluded to by counsel but it is significant in construing the statute. Ch. 79, sec. 1, Laws of 1855, provided that whenever a telegraph company discontinued operations or abandoned its lines it "shall forthwith take down, remove and carry away all the wires used upon said telegraph line, and shall take down and remove all telegraph poles, posts or fixtures, which can in any wise endanger or obstruct travel along any public highway."

The Revised Statutes of 1858, ch. 77, sec. 1, provided:

"Section 1. Any person or persons, and their successors, who may have the legal right so to do, under the laws of congress and patents issued in pursuance thereof, may be and they are hereby authorized to construct and maintain lines of electric telegraph, together with all necessary fixtures appurtenant thereto, from point to point, upon and along any of the public roads or highways or across any of the waters or bridges within the limits of this state, or upon the land of any individual, the owners of the land through which said telegraph

lines may pass having first given their consent: *provided,* that the same shall not in any instance be so constructed as to incommode the public in the use of roads or highway and bridges, or endanger or injuriously interrupt the navigation of said waters."

The revisor's bill of 1878 amended the statute without any stated purpose so that it provided in part:

"But no such telegraph line or any appurtenance thereto shall *at any time obstruct or incommode* the public use of any road, highway, bridge, stream or body of water." (Emphasis added.) R. S. 1878, ch. 86, sec. 1778.

The statute was amended to include telephone companies and now reads as quoted herein, *supra.*

The 1930 Wisconsin Annotations state that our statute came from Massachusetts. Mass. Laws of 1849, ch. 93, sec. 2, provided:

"Any company incorporated for the purpose, may construct lines of electric telegraphs, upon and along any of the highways and public roads, and across any of the waters within the limits of this State, by the erection of necessary fixtures, including posts, piers, or abutments for sustaining the wires of such lines; *provided* the same shall be *so constructed as not to incommode* the public use of said highways or roads, or endanger or interrupt the navigation of said waters; nor shall this act be so construed as to authorize the erection of any bridge across any of the waters of this State." (Emphasis added.)

This statute has evolved to what today is found in Mass. Anno. Stats., ch. 166, sec. 21, which reads:

"CONSTRUCTION OF LINES. A company incorporated for the transmission of intelligence by electricity or by telephone, whether by electricity or otherwise, or for the transmission of television signals, whether by electricity or otherwise, or for the transmission of electricity for lighting, heating or power, or for the construction and operation of a street railway or an electric railroad, may, under this chapter, construct lines for such transmission upon, along, under and across the public ways

and, subject to chapter ninety-one, across and under any waters in the commonwealth, by the erection or construction of the poles, piers, abutments, conduits and other fixtures, except bridges, which may be necessary to sustain or protect the wires of its lines; but such company shall not incommode the public use of public ways or endanger or interrupt navigation. This section shall apply to a company incorporated under the laws of another state for the transmission of intelligence by electricity or by telephone, or television, whether by electricity or otherwise, and which is engaged in interstate commerce within the commonwealth."

It is clear that the early statutes contemplated no negligence *per se*. The Massachusetts statute still does not. Several sections in ch. 166 (Mass.) provide for damages or liability for violation of other provisions, including the one quoted. The Massachusetts law has always run only to construction of the systems; the Wisconsin law runs to construction and maintenance. It is the maintenance provision which has caused the difficulty here.

This court has stated that there is a presumption that a revisor's bill is not intended to change the law. *State ex rel. Youmans v. Owens* (1965), 28 Wis. (2d) 672, 137 N. W. (2d) 470, 139 N. W. (2d) 241; *International Union v. Gooding* (1947), 251 Wis. 362, 372, 373, 29 N. W. (2d) 730. That presumption is properly applicable to this case, as there is nothing in the revisor's notes to indicate that the change was for any purpose other than consolidating several statutes on the same subject. If the amendment was not intended to change the law, then the duty of maintenance for public utilities is one of ordinary care. 52 Am. Jur., Telegraphs and Telephones, p. 97, sec. 66; 86 C. J. S., Telegraphs and Telephones, p. 60, sec. 46; Anno. 97 A. L. R. (2d) 664.

Very few cases have been decided by this court involving a telephone-line obstruction of the highway and none of recent date. In cases cited from this jurisdiction none hold that this statute creates strict liability or that a violation of the statute is negligence *per se* insofar as

inspection and maintenance is concerned.[3] The duty imposed has been that a utility company must exercise ordinary care to timely inspect the lines and appurtenances for any defect that may obstruct or incommode the public in its use of the highway and maintain them in a reasonably safe manner for the same objectives.

It is apparent from the history of the statute as discussed above that the statutory command of sec. 182.017 (1) and (2) goes to the construction of the line and its appurtenances and not to inspection and maintenance.

From the limited transcript it does not appear that the stub pole was in the highway nor that the guy wire as erected and strung over the highway in any way obstructed or incommoded the public in the use of the highway. Nor is there any description of the stub pole as to its size, type or condition or as to its quality or fitness for the purpose intended. The state of the record is such that we must conclude that the construction of the line and its appurtenances did not violate the statute.

We must conclude that the trial court was correct in its opinion that the statute did not apply to the facts and that it did not impose a duty beyond the common-law standard of ordinary care in the inspection and maintenance of its lines and appurtenances. It was not error to refuse to instruct the jury as to the statute.

We are urged as a policy matter to construe the statute so as to impose strict liability upon the utility company because of the vast change in the extent and manner of use of a public highway in our present day as contrasted to the use of public highways at the time the

[3] *Roberts v. Wisconsin Telephone Co.* (1890), 77 Wis. 589, 46 N. W. 800; *Krueger v. Wisconsin Telephone Co.* (1900), 106 Wis. 96, 81 N. W. 1041; *Chant v. Clinton Telephone Co.* (1907), 130 Wis. 533, 110 N. W. 423; *Herlitzke v. La Crosse Inter-Urban Telephone Co.* (1911), 145 Wis. 185, 130 N. W. 59; *Green v. Reedsburg* (1916), 162 Wis. 101, 155 N. W. 938; *Trzebiatowski v. Pike Lake* (1919), 170 Wis. 345, 174 N. W. 915; *Ottman v. Wisconsin-Michigan Power Co.* (1929), 199 Wis. 4, 225 N. W. 179.

statute was enacted. It is also urged that as a modern social concept we should adopt the view that as between two faultless persons the telephone utility which can spread the loss to many without substantial impact to itself or its subscribers should bear the burden rather than permit the injured party to bear the entire burden. In a phrase the plaintiff urges "liability without fault."

While the legislature may or may not want to re-examine and revise the statute in view of present-day conditions, this is a legislative policy matter and not one that should be imposed by the court.

*By the Court.*—Judgment affirmed.