WEISS, by Guardian *ad litem,* Plaintiff and Respondent, v. HOLMAN and others, Defendants and Respondents: WISCONSIN ELECTRIC POWER COMPANY, Defendant and Appellant.

*No. 68. Argued April 30, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 660.)

---

609

610

For the appellant there was a brief by *Prosser, Wieda-bach, Koppa, Lane & Quale, S. C.,* attorneys, and *George W. Greene* and *Rick T. Calvelli* of counsel, all of Milwaukee, and oral argument by *Mr. Greene.*

For the respondent there was a brief and oral argument by *Ronald L. Piette* of Milwaukee.

WILKIE, J. One issue is raised by this appeal: Did the trial court err in ruling that the minor plaintiff's complaint sufficiently states a cause of action based upon the violation of statute and upon common-law negligence?

The power company essentially alleges plaintiff's complaint fails to state a cause of action sounding either in per se negligence arising from the violation of a safety statute, or common-law negligence in the placement of a power pole four feet from the roadway. The following oft reiterated rules relating to review of orders overruling or sustaining demurrers are applicable: (1) Pleadings are to be liberally construed with a view to substantial justice between the parties and are entitled to all reasonable inferences in favor of the pleadings which may be drawn from the facts pleaded;[1] (2) all material well-pleaded facts are to be taken as true;[2] (3) in making this review this court is not concerned with the extent to which the parties will be able to prove their allegations at trial.[3]

A. *Safety Statute Cause of Action.* Paragraph 32 (c) of the complaint alleges the utility company "obstructed or incommoded the public use of the highway" by the placement of its pole and thereby violated sec. 182.017 (2), Stats.[4] The power company contends that this statute must not be read in a vacuum but that it is explained by sec. 340.01 (22), which defines "high-

---

[1] *See e.g., Wulf v. Rebbun* (1964), 25 Wis. 2d 499, 502, 131 N. W. 2d 303; *Jennaro v. Jennaro* (1971), 52 Wis. 2d 405, 409, 190 N. W. 2d 164.

[2] *Merchandising Corp. v. Marine Nat. Exchange Bank* (1960), 12 Wis. 2d 79, 84, 106 N. W. 2d 317.

[3] *Volk v. McCormick* (1969), 41 Wis. 2d 654, 658, 165 N. W. 2d 185. *See also: Ritterbusch v. Ritterbusch* (1971), 50 Wis. 2d 633, 636, 184 N. W. 2d 865.

[4] The complaint, paragraph 32 (c) alleges the defendant to be negligent in that it "[v]iolated Section 182.017 (2) Wis. Stats. in that the pole obstructed or incommoded the public use of the highway, West Mill Road."

way" as that portion of the public way open to the public "for the purposes of vehicular travel." According to appellant, its power pole, located four feet from the traveled portion of West Mill Road, did not obstruct or incommode the highway and, hence, cannot be said to have violated sec. 182.017 (2).

Sec. 182.017 (1), Stats., permits domestic utilities to construct transmission lines and systems "in, across or beneath" public highways subject only to the reasonable regulations of cities or villages through which such lines or systems pass.[5] Sub. (2) of this statute provides the following qualification:

"(2) NOT TO OBSTRUCT PUBLIC USE. *But no such line or system or any appurtenance thereto shall at any time obstruct or incommode the public use of any highway,* bridge, stream or body of water." (Emphasis added.) [6]

Whether this statute is of that class of statutes the violation of which results in per se negligence was extensively considered by this court in *Gray v. Wisconsin Telephone Co.*[7] In *Gray*, a case involving injuries sus-

[5] Sec. 182.017 (1), Stats., provides: "RIGHT OF WAY FOR. Any domestic corporation organized to furnish telegraph or telephone service or transmit heat, power or electric current to the public or for public purposes, and any cooperative association organized under ch. 185 to furnish telegraph or telephone service or transmit heat, power or electric current to its members, may, subject to reasonable regulations made by any city or village through which its transmission lines or systems may pass, construct and maintain such lines or systems with all necessary appurtenances in, across or beneath any public highway or bridge or any stream or body of water, or upon any lands of any owner consenting thereto, and for such purpose may acquire lands or the necessary easements; and may connect and operate its lines or system with other lines or systems devoted to like business, within or without this state, and charge reasonable rates for the transmission and delivery of messages or the furnishing of heat, power or electric light."

[6] Sec. 182.017 (2), Stats.

[7] (1966), 30 Wis. 2d 237, 140 N. W. 2d 203. While earlier cases cite this statute, none discusses per se negligence. *See e.g., Roberts v. Wisconsin Telephone Co.* (1890), 77 Wis. 589, 46 N. W. 800;

tained by a motorcyclist who struck a sagging telephone pole guy wire while on the highway, the court concluded that the statutory command of sec. 182.017 was directed "to the construction of the line and its appurtenances and not to inspection and maintenance." [8] According to the court, the proper standard of care was not per se negligence arising from the violation of a safety statute but, rather, ordinary care in the inspection and maintenance of the defendant's lines and appurtenances. While this court, in *Gray*, did not specifically so hold, it implied that a violation of the statute would have occurred had the telephone wire been *constructed* in a negligent manner:

". . . The state of the record is such that we must conclude that the construction of the line and its appurtenances did not violate the statute." [9]

Lacking specific exclusion or inclusion of sec. 182.017, Stats., in the class of cases in which the statutory violation results in per se negligence, the general rules relating thereto must be examined.

The determination of whether the violation of a statute gives rise to negligence per se has been considered by this court on several occasions. [10] In *Meihost v. Meihost* it was held:

"[W]here a statute is designed to protect a class of persons from a particular type of harm, a violation of

*Chant v. Clinton Telephone Co.* (1907), 130 Wis. 533, 110 N. W. 423.

[8] *Gray v. Wisconsin Telephone Co., supra,* footnote 7, at page 249.

[9] *Id.*

[10] See *Burke v. Milwaukee & Suburban Transport Corp.* (1968), 39 Wis. 2d 682, 690, 159 N. W. 2d 700; *Schroeder v. Northern States Power Co.* (1970), 46 Wis. 2d 637, 646, 176 N. W. 2d 336; *Hein v. Torgeson* (1973), 58 Wis. 2d 9, 205 N. W. 2d 408.

the statute which results in that type of harm to someone in the protected class constitutes negligence *per se.*" [11]

Thus, the critical question is "whether the purpose of the ordinance was to protect the party seeking to invoke it, *i.e.*, was he within the class of persons that the legislature plainly intended to protect." [12] In *Delaney v. Supreme Investment Co.* we held that this court must be convinced beyond any reasonable doubt that the legislature's purpose in adopting the statute was that alleged by the injured plaintiff. [13]

Applied to the instant case, it is clear sec. 182.017 (2), Stats., is a safety statute, the violation of which results in per se negligence. In addition to the implication left by this court in *Gray v. Wisconsin Telephone Co.*, [14] logic dictates that a statute which prohibits any obstructing or incommoding of the public use of any highway can have but one purpose—that of preventing injury, either direct injury by striking a misplaced pole or appurtenance or indirect injury in being forced to leave the highway in order to continue one's journey. While both words give rise to connotations of convenience, it would seem more likely that the legislature in this enactment, which was first adopted in 1858, [15] would be more concerned with personal safety.

We conclude, therefore, that this statute, when violated, gives rise to per se negligence, and the instant plaintiff, a sojourner along a public highway, is within

[11] (1966), 29 Wis. 2d 537, 540, 139 N. W. 2d 116. *See also: Szafranski v. Radetzky* (1966), 31 Wis. 2d 119, 128, 141 N. W. 2d 902.

[12] *Schroeder v. Northern States Power Co., supra,* footnote 10.

[13] (1947), 251 Wis. 374, 380, 29 N. W. 2d 754, overruled on other grounds, *Fisher v. Simon* (1961), 15 Wis. 2d 207, 213, 112 N. W. 2d 705. *See also: Burke v. Milwaukee & Suburban Transport Corp., supra,* footnote 10, at page 689.

[14] *Supra,* footnote 7.

[15] Ch. 77, sec. 1, Revised Statutes 1858.

that class of persons sought to be protected. But since in view of *Gray,* such per se negligence does not apply to the maintenance of a utility pole or other appurtenance, but only to its initial construction, we must determine whether the utility company may have violated its statutory duty not to obstruct or incommode the highway in the initial placement of its power pole. The crucial question is the correct meaning of the word "highway."

In this connection, sec. 182.017 (2), Stats., which describes the duty of a utility, is first supplemented by sec. 340.01 (22) of the Vehicle Code which, in its definitions of words and phrases, states:

" 'Highway' means all public ways and thoroughfares and bridges on the same. *It includes the entire width between the boundary lines of every way open to the use of the public as a matter of right for the purposes of vehicular travel. . . .*" (Emphasis added.) [16]

The power company argues that its power pole, constructed a distance of four feet from the traveled portion of West Mill Road, did not obstruct legitimate vehicular use and did not, therefore, violate sec. 182.017.

Cognizance must also be taken of the following Legislative Council note of 1957 regarding such definition:

"This definition is important in setting the scope of the entire vehicle code because most provisions of chs. 341 to 349 apply only upon 'highways.' The new definition clarifies in various respects the definition in present sec. 85.10 (21). The present definition does not state that highway means the entire width between the boundary lines yet that clearly is the sense in which it is commonly used and understood. *The term 'highway' includes the entire right of way as distinguished from the 'roadway' which is only a limited part of the highway. . . .*" (Emphasis added.) [17]

---

[16] Sec. 340.01 (22), Stats. *See also: Poyer v. State* (1942), 240 Wis. 337, 340, 3 N. W. 2d 369.

[17] 39A W. S. A., p. 15, sec. 340.01 (22).

Thus, although the statutory wording itself is vague because it speaks in terms of vehicular travel as a matter of right without defining the perimeter of such travel, the committee note makes it clear that the legislative intent was to give "highway" a broader scope than "roadway" which expressly excludes the berm or shoulder.[18]

The Vehicle Code's definition of "highway" can be used to explain the ambiguous provisions of sec. 182.017 (2), Stats. It has long been settled in this state that statutes *in pari materia, i.e.,* dealing with the same subject matter, must be read together and harmonized if possible.[19] Sec. 182.017 (2) is concerned with the safety of those traveling upon highways who are subject to injury should a utility pole or similar appurtenance be placed on the highway. The Wisconsin Vehicle Code is concerned with the overall safety and well-being of persons traveling upon the state's highways. We conclude that the precise definition of "highway" found in the Vehicle Code applies to sec. 182.017 (2), and defines the usage of "highway" therein. "Highway" includes the "roadway," which is that portion of the road usually used for vehicular travel, *and* the shoulder of such improved surface where one exists.

In the present complaint it is alleged that defendant's power pole was placed "within four feet of the West Mill Road roadway" and "too close to the traveled roadway;" that by virtue of such placement the utility "[v]iolated Section 182.017 (2), Wis. Stats., in that the pole obstructed or incommoded the public use of the highway, West Mill Road." It is also alleged the pole was

---

[18] Sec. 340.01 (54), Stats., provides: " 'Roadway' means that portion of a highway between the regularly established curb lines or that portion which is improved, designed or ordinarily used for vehicular travel, excluding the berm or shoulder. In a divided highway the term 'roadway' refers to each roadway separately but not to all such roadways collectively."

[19] *City of Milwaukee v. Milwaukee County* (1965), 27 Wis. 2d 53, 56, 133 N. W. 2d 393.

located "on public property within the highway right of way." While the complaint does not state whether or not a highway shoulder existed or whether the pole was located upon such shoulder, it does state the pole was within four feet of the "traveled roadway." While this court must, of course, confine itself to the facts stated in the complaint,[20] it has consistently adhered to the rule of liberal construction which permits reasonable inferences to be drawn from the pleaded facts.[21] It seems reasonable to infer from the instant complaint that a highway shoulder did exist alongside the traveled portion of West Mill Road and that it was at least four feet in width.[22] Such being the case, plaintiff-respondent has stated a cause of action against defendant-appellant for the breach of its statutory duty not to obstruct or incommode the public use of any highway.

B. *Common-Law Cause of Action.* The utility company contends also that plaintiff's complaint failed to state a cause of action sounding in common-law negligence. Apparently conceding that liability for a power pole constructed too close to a highway may in certain circumstances exist, appellant argues that the instant collision with the pole was a "nonactionable fortuity" because it was caused by a collision, seconds earlier, with another vehicle. According to appellant, this circumstance distinguishes it from those cases wherein a slight inattention on the part of the driver of a vehicle re-

[20] *Sahloff v. Western Casualty & Surety Co.* (1969), 45 Wis. 2d 60, 62, 171 N. W. 2d 914.

[21] *Supra,* footnote 1. *See also: Waukesha County Dept. of Social Services v. Loper* (1972), 53 Wis. 2d 713, 715, 193 N. W. 2d 679.

[22] While nothing in the pleadings mentions a ditch and the pole's implantation therein, two pictures presented to this court on oral argument quite clearly depict the pole's location off the road's shoulder. These pictures are not in the record. On demurrer this court is confined to the pleaded facts.

sulted in collision with a power or telephone pole and liability was predicated.

It has long been recognized that owners of property which abuts or adjoins a public highway are subject to liability if a condition is created or permitted on their property which renders travel on the highway unsafe.[23] Dean Prosser describes an abutting landowner's duty thusly:

"The status of a user of the highway has been extended to those who stray a few feet from it inadvertently. It has been extended also to those who deviate intentionally for some purpose reasonably connected with the travel itself . . . ."[24]

The Restatement also recognizes the duty:

"Conditions Dangerous to Travelers on Adjacent Highway
"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
"(a) are traveling on the highway, or
"(b) foreseeably deviate from it in the ordinary course of travel."[25]

In the first illustration to this rule, liability by an abutting landowner for injury to travelers attaches when the landowner digs a ditch at a point along the highway

---

[23] *See e.g.*, Annot. (1921), *Injury to One Deviating From Highway*, 14 A. L. R. 1397; (1945), 159 A. L. R. 136. *See also:* Jones, *Telegraph and Telephone Companies* (2d ed. 1916), 212; Keasbey, *The Law of Electric Wires* (2d ed. rev. 1900), 244 *et seq.*

[24] Prosser, *Law of Torts* (4th ed. 1971), p. 353, ch. 10, sec. 57.

[25] Restatement, 2 *Torts* 2d, p. 268, sec. 368.

where carefully driven automobiles are likely to skid into such ditch.[26]

This court has previously addressed itself to the liability of abutting landowners or those responsible for the maintenance of the highway and land adjacent thereto for injuries sustained by sojourners along such way. While the earliest cases arguably confine responsibility for maintenance only to the traveled portion of the highway,[27] as early as 1872 this court, in *Wheeler v. Town of Westport,* extended what it denominated the "well settled general rule" to include those portions of the highway where it is reasonably foreseeable that travelers might step outside the usually traveled portion of the road:

". . . It being the duty of towns, therefore, to make their highways safe and convenient, and in so doing to take care that upon roads of the kind here in question, there be no dangerous obstruction or defect so near to the traveled way, as the place where the plaintiff was walking, it would seem to follow that such place was or ought to have been considered a suitable and proper place for a foot passenger to walk, or for a team or wagon to be driven . . . ."[28]

Also involving a municipality is *Slivitski v. Town of Wien,* a case wherein plaintiff's decedent was thrown from his wagon after striking logs which were within eight or nine inches of the road.[29] According to the court it was:

[26] *Id.* at page 270.

[27] *See e.g., Houfe v. Town of Fulton* (1871), 29 Wis. 296; *Jackson v. Town of Bellevieu* (1872), 30 Wis. 250. *See also: Kelley v. Town of Fond du Lac* (1872), 31 Wis. 179, 186: ". . . The responsibility of towns, without doubt, primarily extends only to losses or damage sustained by reason of defects in the traveled portion of the highway, for they are not bound to keep the highway in its whole width in a suitable or safe condition for travel."

[28] (1872), 30 Wis. 392, 412. *See also: Cartwright v. Town of Belmont* (1883), 58 Wis. 370, 374, 17 N. W. 237.

[29] (1896), 93 Wis. 460, 67 N. W. 730.

". . . [W]ell settled in this court that, to render a town liable for injury by reason of an alleged defective highway, the object or defect causing the injury need not be within the traveled track, provided it is so connected with the traveled track as to render the same unsafe and inconvenient to those traveling thereon." [30]

The liability of abutting landowners for injuries sustained by travelers upon a highway caused by dangerous conditions in close proximity to the traveled portion of the highway has remained unchanged in the motor era. In both *Sweetman v. Green Bay* [31] and *Gottlieb v. Racine*, [32] this court held a town's duty to maintain safe highways extended to unsafe conditions outside the regularly traveled portion of such road. *Sweetman* is a case involving damages sustained by a plaintiff who drove his auto partially off the muddied roadway in order to gain traction from the grass. As he was so driving, the road deviated slightly and plaintiff, not also turning, totally left the highway and struck a culvert. The court held that, while much depends upon the nature of the highway defect complained of and its visibility,

". . . We are persuaded . . . that this unguarded pit or ditch was such a danger connected with the traveled track as to make it an insufficiency in the highway crossing and rendered it not reasonably safe for use by the traveling public . . . ." [33]

Akin to the instant case, this court has also considered several cases involving allegations of highway defects or conditions by virtue of the location of power or

---

[30] *Id.* at page 462. *See also: Wells v. Remington* (1904), 118 Wis. 573, 95 N. W. 1094; *Hebbe v. Maple Creek* (1904), 121 Wis. 668, 99 N. W. 442; *Konkel v. Pella* (1904), 122 Wis. 143, 99 N. W. 453.

[31] (1912), 147 Wis. 586, 132 N. W. 1111.

[32] (1940), 234 Wis. 343, 291 N. W. 335.

[33] *Supra,* footnote 31, at page 590.

telephone poles and other appurtenances.[34] In *Roberts v. Wisconsin Telephone Co.* this court reversed a trial court's overruled demurrer.[35] According to the complaint, the plaintiff was injured when in the act of alighting from his buggy, his horses bolted and collided with a telephone pole approximately three feet from the traveled roadway. According to the court the true cause of the accident was not the location of the pole which, it was noted, could not have been placed any further from the road, but the plaintiff's unmanageable horses.

In an automobile case, this court in *Druska v. Western Wisconsin Telephone Co.*, affirmed a judgment in favor of an injured plaintiff against the defendant telephone company which had located a pole 11 or 12 inches from the "traveled track of a highway," and "over four feet from the nearest limits of the highway." [36] Without mentioning the earlier *Roberts* decision, the court noted that despite the driver's "slight inattention," the jury was justified in finding the location of the telephone pole was the proximate cause of the plaintiff's injury:

"A telephone pole located from eleven to twelve inches outside of a traveled track of a highway . . . may properly be found by a jury to interfere with the use of the highway by the public even though the traveled portion of the highway at that point was about fourteen feet wide." [37]

Citing both the *Roberts* and *Druska Cases* was *Phelps v. Wisconsin Telephone Co.*, wherein this court reversed

---

[34] Not in point are cases involving utility appurtenances actually in the highway as, for example, sagging wires across a highway. *See e.g., Chant v. Clinton Telephone Co., supra,* footnote 7; *Herlitzke v. La Crosse Inter-Urban Telephone Co.* (1911), 145 Wis. 185, 130 N. W. 59; *Trzebiatowski v. Pike Lake* (1919), 170 Wis. 345, 174 N. W. 915.

[35] (1890), 77 Wis. 589, 592, 46 N. W. 800.

[36] (1922), 177 Wis. 621, 189 N. W. 152.

[37] *Id.* at page 623.

a judgment of the trial court entered, after a jury trial, in favor of the plaintiff.[38] The telephone pole and guy wire in *Phelps* were located well off the turning highway but at the end of an unimproved offshoot of such road which led to a dead end. According to the court the pole and guy wire were not close enough to the highway to constitute actionable negligence:

". . . However, this showing of sporadic and occasional use south of the pole [on the dirt offshoot] by persons operating under the mistaken assumption that the road led someplace is not a showing that there was public travel on this highway, and it is even further from a showing that the guy wire, which under any construction of the evidence was not in or immediately adjacent to a traveled part of the highway itself, was exposed to traffic . . . ."[39]

The court distinguished the *Druska Case* on the basis of the slight distance of the pole therein from the traveled path.

The *Druska* decision, however, was cited as authority in *Wisconsin Telephone Co. v. Matson*[40] to affirm a trial court's order granting defendant truck owner's motion for a new trial after the telephone company had prevailed in a suit for damages to its pole. According to this court a requested instruction concerning plaintiff telephone company's contributory negligence in its placement of the pole ought to have been submitted to the jury and the failure to do so was grounds for a new trial. The pole was located, the court stated, "close to the curb."[41] According to the court:

". . . In *Drusk v. Western Wis. Tel. Co.* (1922), 177 Wis. 621, 189 N. W. 152, we allowed a recovery for

[38] (1943), 244 Wis. 57, 11 N. W. 2d 667.
[39] *Id.* at page 61.
[40] (1950), 256 Wis. 304, 41 N. W. 2d 268.
[41] *Id.* at page 307.

plaintiff's damages when her host's car ran off the road and struck defendant's pole located four feet from and somewhat higher than the highway, thereby sustaining a jury finding that a cause of her injuries was defendant's planting the pole where it constituted an obstruction to traffic. On the authority of that case, the present plaintiff's pole being only one foot from the curb, the refusal of the request was error for which a new trial must be granted." [42]

Three principles can thus be drawn from our Wisconsin decisions: First, public utilities as well as municipalities have been held liable in this state on a common-law theory of liability for the improper construction of poles and appurtenances which cause injury to sojourners. Second, while the early cases restricted recovery for injury to those who stayed within the confines of the traveled portion of the highway, the majority of cases since the last third of the 19th century have permitted recovery to sojourners who deviate from the highway proper. Third, although the cases involving nonutilities stress the foreseeability of the deviation rather than distance, the utility cases, especially the early ones, emphasize greatly the distance of the plaintiff's deviation from the highway. In one case, however, four feet was not regarded as too great.[43]

The appellant utility's principal contention is that it ought not be held liable for the plaintiff's injuries in this case because the true cause of the collision with the pole was the prior collision between the Weiss and Holman automobiles. It is argued that this first collision was an event which the utility could not have reasonably foreseen in the construction of its power pole. It is also argued by the utility that the negligence of the utility, if such be found, was not the proximate cause of the collision. It is urged that the collision between the Weiss

[42] *Id.* at page 314.
[43] *Druska v. Western Wisconsin Telephone Co., supra,* footnote 36.

and Holman automobiles was a superseding intervening cause which absolves the utility from responsibility.

As to appellant's first argument, we are satisfied that it is a question of fact [44] whether the utility could reasonably have foreseen the probable harm [45] as a result of its act of constructing a telephone pole four feet from the roadway on the corner of West Mill Road and North 84th Street in Milwaukee.

As to defendant's contention that its negligence, if any, was not a substantial factor in causing plaintiff's injuries, and that such injuries were caused by a superseding intervening cause, this court has consistently held that the trial court must make the determination that an intervening cause superseded the initial negligent act.[46] Prior to such trial court determination, according to *Strahlendorf*, it is a condition precedent "for the jury to have determined that the defendant's found negligence was causal." [47] Since the issue of superseding cause can only be determined after trial, it is not proper for appellant to raise such issue here.

Appellant utility's final argument is that this court ought to hold, pursuant to *Colla v. Mandella*, that recovery against it ought to be denied on the public policy grounds that the injury involved is far too remote from the negligence and wholly out of proportion to its culpability.[48] While this court recently concluded, in *Hass v. Chicago & N. W. Ry. Co.*, that the *Colla* public policy

[44] *Padilla v. Bydalek* (1973), 56 Wis. 2d 772, 778, 203 N. W. 2d 15.

[45] *See e.g., Osborne v. Montgomery* (1931), 203 Wis. 223, 239–243, 234 N. W. 372; *Butzow v. Wausau Memorial Hospital* (1971), 51 Wis. 2d 281, 286, 287, 187 N. W. 2d 349; *Meihost v. Meihost, supra,* footnote 11.

[46] *Strahlendorf v. Walgreen Co.* (1962), 16 Wis. 2d 421, 430, 114 N. W. 2d 823.

[47] *Id.* at pages 430, 431.

[48] (1957), 1 Wis. 2d 594, 598, 599, 85 N. W. 2d 345.

determination can be made on demurrer,[49] it has more recently held that "it is usually better practice to submit the issue to the jury insofar as determining the issues of negligence and causation in the same manner as in the ordinary case." [50]

*By the Court.*—Order affirmed.

---

[49] (1970), 48 Wis. 2d 321, 326, 327, 179 N. W. 2d 885.
[50] *Padilla v. Bydalek, supra,* footnote 44, at page 779.